# F. A. BRETTSCHNEIDER v. THOMAS G. WELLMAN AND OTHERS.
## LAKE CITY FEDERAL SAVINGS & LOAN ASSOCIATION, APPELLANT.[1]

February 10, 1950.

No. 35,069.

[1]Reported in 41 N. W. (2d) 255.

*William G. Lindmeier* and *Kenneth R. Smith,* for appellant.

*Foley & Foley,* for respondents Thomas G. and Antoinette A. Wellman.

*Arnold W. Hatfield,* for respondents F. A. Brettschneider, Henry Schmauss, and Oliver K. Hein.

*Harold S. Streater,* for respondent Botsford Lumber Company.

*Lawrence R. Lunde,* for respondent Gipson Lumber Company.

KNUTSON, JUSTICE.

Defendant Thomas G. Wellman, desiring to build a house, had preliminary talks with an architect, Edward W. Barber, the contemplated contractor, Emery Wohlers, and one D. L. Mills, secretary and treasurer of appellant, Lake City Federal Savings and Loan Association, during the early part of 1946. Before he had a deed to the lot on which he proposed to build his house, he told Wohlers, on or about July 20, 1946, that everything was all set and that he should go ahead with the work. Wohlers thereupon did some brushing on the lot, and on or about August 16, 1946, he procured a power shovel and had the basement excavated. On August 21, 1946, Wellman and Wohlers signed a contract under which Wohlers agreed to build the house according to the architect's plans and specifications for $10,715. On August 21 or 22, 1946, Wellman applied to appellant for a loan, which was approved, and a note in the amount of $12,115, secured by a mortgage covering the premises on which the house was to be built, in the usual form, was signed by Wellman on August 27, 1946. It was filed for record in the office of the register of deeds of Wabasha county, Minnesota, on August 28, 1946. The debt was guaranteed by the

veterans administration up to the sum of $4,000 by what is commonly known as a G. I. loan. From the proceeds of the loan, appellant paid for the lot and some other items of expense which had been incurred. The first material for the house was secured on October 14, 1946, after which work began. The architect supervised the work and was at the house at least three times each week. On December 14, 1946, appellant and Wellman executed a loan settlement statement under which Wellman approved certain payments which had been made out of the proceeds of the loan and appellant set forth the balance of the loan to be paid Wellman.[2]

---

[2]"LAKE CITY FEDERAL SAVINGS AND LOAN ASSOCIATION
Loan Settlement Statement

To Thomas G. Wellman December 14, 1946.
 (Name of Borrower) (Date)
 Lake City, Minn. 302 N. Oak Street
 (Location of Property)
Dear Dr. Wellman; Date of
 Loan Papers, August 27, 1946

Your application for a real estate loan has been approved, and we submit herewith for your information the terms of the loan, and the expenses thereof, whether charged to you by the association, paid for you by the association, or paid by you to some person other than the association.
Loan No. M 4321 Amount $12,115.00 Rate of Interest 4%
Each monthly payment of $83.50 is due on the 15th. day of each month, beginning on Apr. 15, 1947

---

A. Amount of loan ........................................ $12115.00
 Amount received from you......................$160.00
 Total amount credited to your account............ $12275.00

---

B. We have charged or will charge to your account for expenses incurred in connection with this loan, the following items:

| Item | Recipient | Amount |
|---|---|---|
| Credit report ................................ $ | | |
| Survey ....................Association | | 10.00 |
| Appraisal fee ..............E. T. Hartung | | 10.00 |
| Title charges ..............Donald Duerre | | 5.50 |
| Legal fee ..................K. R. Smith | | 4.00 |

The contract between Wellman and Wohlers contains this provision:

"Article III. The Owner agrees to pay the Contractor in current funds for the performance of the contract ten thousand seven hundred fifteen dollars ($10,715.00) subject to any additions or deductions to the general conditions of the contract agreed upon in writing, and to make payments on account hereof upon presentation of proper lien waivers, as the work progresses."

After the execution of the loan settlement statement, appellant paid for material furnished and paid the contractor, upon submis-

| | | |
|---|---|---|
| Recording fee ..............Register of Deeds.... | 1.75 | |
| Initial service charge........................... | | |
| Mortgage Tax .............County Treasurer..... | 18.30 | |
| Total deductions by association for loan expenses | | $ 49.55 |

C. Net amount available for the purposes of the loan $12225.45

D. Additional amount to be received from you to provide funds for all loan disbursements.........................$........

E. Loan disbursements made or to be made by the association on your order:

| Item | Payee | Amount |
|---|---|---|
| Deed | Raymond Walstrom | $1050.00 |
| Insurance | Continental Insurance Co. | 108.00 |
| Recording Deed | Register of Deeds | 1.25 |
| Contract | Emery Wohlers | 1252.00 |

(In the case of a construction loan or in connection with any loan requiring a large number of disbursements or changes in the foregoing, the association will submit a detailed statement when the loan is disbursed in full.) Total $ 2411.25

F. Amount to be paid by the association to you as the balance of the loan..................................$ 9814.20

\* \* \* \* \*

LAKE CITY FEDERAL SAVINGS AND LOAN ASSOCIATION
By D. L. Mills, Secy.

December 14, 1946.

The undersigned acknowledges the receipt of this Loan Settlement Statement, and agrees to the correctness thereof, and authorizes and ratifies the disbursement of the funds as stated therein.

(Borrower) Thomas G. Wellman"

sion by the claimants of statements purporting to represent completed work or material furnished, in the following amounts:

| | | |
|---|---|---:|
| February 3, 1947—Emery Wohlers | | $ 380.00 |
| | A. M. Kramer | 187.50 |
| | F. A. Brettschneider | 33.50 |
| | Schmauss Plumbing | 77.45 |
| | William Kehren | 18.50 |
| | Arthur Mickow | 25.00 |
| February 27, 1947—Cochrane Kirkwood | | 73.95 |
| April 22, 1947 —Emery Wohlers | | 2,200.00 |
| May 26, 1947 —Emery Wohlers | | 2,000.00 |

No lien waivers were taken, nor were the bills submitted to Wellman or his architect for approval. Wellman testified that he assumed that the payments were being made, that this was the usual way of handling building, and that it was agreeable to him that the matter be so handled. Wellman made monthly payments on the note from April 24, 1947, to November 14, 1947, aggregating $678. He also paid $160 toward loan expenses, as shown on the loan settlement statement.

During the progress of the work a number of changes and alterations were made in the plan. Wellman thought that the additions which would increase the cost would about equal those changes which decreased the cost. In addition to these changes, an old house was purchased and wrecked, and much of the material was used in building Wellman's house. The record fails to disclose how much, if any, the use of such old material added to the cost. In any event, during late May or early June 1947, appellant became apprehensive of being able to complete the house with the remaining money from the loan and refused to pay any more bills unless Wellman could raise more money to insure completion of the project. Wohlers continued to work until June 17, 1947, when he discontinued his work. The amount of the loan then remaining undisbursed was $4,818.30. Outstanding bills amounted to about $5,233.24. Much of the material for the completion of the house was then on the loca-

tion. The cost of completing the house was estimated by the architect to be about $1,800 to $2,000 above the money then on hand.

After appellant refused to make any more payments and Wohlers had quit work on the project, liens were filed by plaintiff, F. A. Brettschneider, and defendants Botsford Lumber Company, a corporation, Henry Schmauss, Gipson Lumber Company, a corporation, and Oliver K. Hein. Appellant thereafter applied the undisbursed balance of the loan on the note. Actions to foreclose the liens and the mortgage were consolidated for trial. The trial court found that the liens were entitled to priority over the mortgage and that appellant was entitled to recover $1,718 with interest, which amount was arrived at by deducting from the payments approved in the loan settlement statement the payments made by Wellman on the note. The court held that other payments made by appellant were unauthorized and that Wellman had not received $9,814.20 of the consideration of the note and mortgage. Wohlers was denied any recovery, for the reason that he had not performed his contract. He has not appealed. In its memorandum to the order denying appellant's motion for amended findings or a new trial, the court explains the reason for its decision thus:

"The evidence clearly shows that the association did not make the disbursements at the instance or request of the mortgagors. It did not rely upon the representations of the mortgagors nor of their architects. It made no investigations of its own. It merely paid out, from time to time, eighty per cent of the bills without questioning the amount and without regard to the contract price or the status of the work. It was this foolish practice that brought about the catastrophe."

Appellant attempted to show an oral understanding or agreement between it and Wellman under which appellant was to pay for labor and material as the work progressed. The trial court refused to admit evidence of such agreement.

The appeal presents for our determination these questions:

(1) Are the lienholders entitled to preference over the mortgage of appellant?

(2) Was it error to reject evidence of an oral understanding as to how the proceeds of the loan should be disbursed?

(3) Is the court's finding as to the amount appellant is entitled to recover sustained by the evidence?

 M. S. A. 514.05 provides:

"All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, but a person having a contract for the furnishing of labor, skill, material, or machinery for such improvement, may file for record with the register of deeds of the county within which the premises are situated, or, if claimed under section 514.04, with the secretary of state, a brief statement of the nature of such contract, which statement shall be notice of his lien for the contract price or value of all contributions to such improvement thereafter made by him or at his instance."

It is the contention of appellant that the excavation of the basement was made before the formal contract was entered into with Wohlers; before Wellman made application for a loan or executed the note and mortgage; and before Wellman actually procured a deed to the lot. Therefore, it contends, the digging was no part of the contract to build, but was a separate venture. With these contentions we cannot agree. The record does not show what interest Wellman had in the lot before he actually procured a deed to it. In Colman v. Goodnow, 36 Minn. 9, 10, 29 N. W. 338, 339, 1 A. S. R. 632, where title was held by a third party at the time the contract to build was entered into, we said:

"* * * At the time the contract was made they had not acquired title to the land, but the same was owned by one Pease, who. conveyed the same to the defendant Goodnow at the date last mentioned. Whether the defendants before this time were in possession of the premises under a contract with Pease is not found. It does not appear that they were trespassers, and it will be presumed, the contrary not appearing, that they were rightfully in possession, and had some right upon or interest in the land sufficient to uphold a lien upon the building. Phil. Mech. Liens, § 187."

Here, the court found that the basement was dug in anticipation of the contract with Wohlers. Wellman gave the orders to go ahead with the work after preliminary talks with the contractor and an officer of appellant.

All the equities between the parties favor preferring the lienholders to the holder of the mortgage. The court found that the lienholders were entitled to recover the following amounts:

| | |
|---|---|
| F. H. Brettschneider | $ 537.86 |
| Botsford Lumber Company | 2,478.40 |
| Henry Schmauss | 287.45 |
| Gipson Lumber Company | 1,019.55 |
| Oliver K. Hein | 83.60 |
| Total | $4,406.86 |

At the time payments were discontinued by appellant, there remained sufficient money out of the proceeds of the loan to discharge these claims. The lienholders were in no way chargeable with the downfall of the project, but that cannot be said of appellant. Implicit in the court's findings is the fact that the work began with the digging of the basement, and, even though there was a lapse of time between the digging and the actual construction, the project was continuous and inseparable. The contract with Wohlers, when executed, included the necessary excavation. The mere fact that the formal contract was executed after the basement was dug would not prevent the excavation from being a part of the work of con-

structing the house when it was made in contemplation of and as a part of the entire project. The court's finding that the liens have priority over the mortgage is amply sustained by the evidence.

Carr-Cullen Co. v. Deming, 176 Minn. 1, 222 N. W. 507, relied upon by appellant, is readily distinguishable from the case before us. In that case, an old building was sold to a third party for removal. We held that the agreement for sale, wrecking, and removal of the old building was not so linked with the contract of excavating as to make it one contract, but that there were two separate contracts. Here, the work of excavating the basement was clearly a part and parcel of the work of building the house. It was included in the plans and specifications of the contract to build when that was signed. The court could well find that it constituted the beginning of the construction of the house.

In City of Ortonville v. Geer, 93 Minn. 501, 101 N. W. 963, 106 A. S. R. 445, cited by appellant as authority for the proposition that the work must be continuous, we had occasion to consider the statute here involved. The case is not contra to the finding of the trial court. The mere lapse of time between the excavating and the building did not prevent the work from being continuous. Many things might cause a building project to be temporarily halted, but if there is no abandonment or severance of the contract it may still be entire and continuous in nature within the contemplation of the statute.

■ Next is the contention of appellant that the court erred in refusing to admit oral evidence of an agreement, made prior to the execution of the note and mortgage, as to the method of disbursing the proceeds of the loan. The note and mortgage are unambiguous. Possibly, it would have been wiser if appellant used some other form of written contract had it intended to reserve the right to disburse the funds at its pleasure, but the choice of the form of contract was largely in the hands of appellant, and in clear terms it calls for payment of the entire proceeds of the loan to Wellman. If there was any question about this, insofar as the note and mortgage are concerned, the loan settlement statement signed on De-

cember 14, 1946, effectively eliminates any claim to the contrary. The oral conversations antedating the written contracts must be held to have been merged in the written instruments. There was no error in rejecting evidence of such oral understanding.

■ The third contention of appellant is that it should have been allowed to recover the entire amount paid out. The court allowed only those items approved by Wellman in the loan settlement statement, less what he had paid on the mortgage note. While it seems unfair that Wellman should be allowed to redeem, if he sees fit to do so, without repayment of the items appellant has paid the contractor and others who furnished material for the project, in view of Wellman's testimony that he understood this was the way building loans were handled and the further fact that he paid no attention to it and knew that appellant was making some payments, it would be still more unfair to require payment of these items if Wellman is to lose the house, in view of the manner in which appellant handled the payments. It should have been a simple matter for appellant to procure approval by Wellman or his architect before the bills were paid and to verify the fact that the materials and labor for which payment was demanded had actually gone into the construction. In addition to that, it procured no lien waivers of any kind. The contract itself between Wellman and Wohlers required the furnishing of waivers of liens before any payments were to be made. Appellant also discontinued payments and precipitated the capitulation of the entire project while it still had ample funds in its hands to discharge the liens which were filed. We cannot say what would have happened had appellant continued to make payment of claims, based upon verified statements, until the money was exhausted.

Under the circumstances, it must be held that the court's finding that there was a failure of consideration to the extent of $9,814.20 is sustained by the evidence.

Affirmed.