[Civ. No. 17662.   Second Dist., Div. Two.   Oct. 17, 1950.]

FREDERICK A. EBNER et al., Respondents, v. MILTON S. SHEEHAN et al., Appellants.

W. C. Schaper and Glenn Simpson for Appellants.

John K. Blanche and Charles M. Fueller for Respondents.

MOORE, P. J.—The judgment herein cancels (1) respondents' promissory note in favor of appellants in the sum of $5,500 and (2) the lien of their deed of trust upon their home as security for such note, and it quiets their title against the lien. Appellants have brought the matter to this court demanding a reversal of the judgment on the grounds of the insufficiency of the evidence and errors of law occurring at the trial.

The controversy originated in the abrupt conduct of one Frank C. Lewis who having set up as a. builder in the community of Pasadena had agreed to build for respondents a home to cost $8,300 including the cost of the lot. About March 15, 1948, Mr. Sheehan, herein referred to as "Sheehan," read an advertisement of Lewis for a man to work in the building industry. As a result the two men met. Two weeks later Lewis employed Sheehan to serve as timekeeper on construction work. At the same time he induced Mr. and Mrs. Sheehan to make a building loan to respondents. To effect such transaction, on April 3 Lewis accompanied Sheehan to their home where he met Mrs. Ebner. Lewis explained to the lady that appellants had agreed to put up the $5,500 for their home. On April 5 appellants met Lewis and one Rutledge, the lot owner, at the bank and opened an escrow for the loan. Appellants agreed to loan $5,500 on the note of respondents secured by a trust deed on the home—such loan to be discharged with the funds of a new loan "as soon as the house was finished." On April 6 appellants withdrew $1,500 from a savings and loan association and deposited the check in the escrow. On April 15 they withdrew $1,500 and deposited $1,300 in the bank to the account of "Frank C. Lewis, building contract account," and paid $200 thereof directly to Lewis. On May 4 they withdrew another $1,500 and deposited it in the same account. On June 4 they withdrew $2,000 from the same savings account and deposited it in the same building account. Fifty-five hundred dollars of such money were deposited for the note and trust deed.

From the same Frank C. Lewis building account checks were drawn in payment for materials and labor used on the Ebner house in the total sum of $5,912.92. Such checks were drawn by Sheehan as an employee of Lewis. Before the house had been completed, Lewis took his departure; was never served with process in this action and made no appearance. The house was so far from completion as to render its occupancy perilous.

In their brief respondents say that they "under the terms of the building contract were to pay $2800 in cash to Mr. Lewis and $5500 by promissory note secured by deed of trust and were to receive in return a completed house, the house and lot to be delivered for the total price of $8300."

The findings are that (1) appellants agreed to lend and deliver to respondents the $5,500; (2) such sum was never paid; (3) the consideration for the note and trust deed failed;

(4) Sheehan was at all times mentioned the agent of Lewis; (5) appellants' loan and the building contract were parts of the same transaction; (6) appellants did not pay respondents $5,500 or any part thereof. Basing their contentions upon such findings respondents assert that affirmance of the judgment is a simple matter. Their confidence has not wholly permeated the conscience of the court. ▮ The basis for the finding that the money was never paid to respondents lies in the fact that the money was deposited in the bank account of Lewis instead of in the account of respondents. The building contract obligated Lewis to finish the construction for $8,300. Respondents paid him $2,400. When the parties conferred concerning the loan no limitations were specified by the Ebners as to the manner of disbursing the money. Respondents made their payments to Lewis or to his bank account, suggested no other person to receive appellants' money, and made no objection to their paying the loaned amount to Lewis directly or to its being deposited in his bank account. For over 90 days all bills for materials and labor were paid from that account. Surely respondents knew that they had not paid any of them and when they contracted for the loan they did not require appellants to pay the $5,500 to themselves or that they place it in escrow for disbursement in progressive payments. Indeed, Mr. Ebner testified that at the time he signed the note and trust deed he did not expect to receive the $5,500 in cash to be disbursed by himself, but did expect it to be used in the erection of the building, and that as long as this was done it was immaterial as to how it was disbursed. Appellants, being unschooled in the art of moneylending for building purposes acted in the light of the congenial behavior of Lewis and respondents and placed the money where it could be used for paying bills as necessity required. Their act in depositing the funds in the Lewis account against which Sheehan would draw checks to pay bills was in effect identical with the method of direct payment by respondents of the money on the cost of construction. Sheehan was under contract to loan the money; he advanced it. Therefore there was no failure of consideration.

There is no evidence that Sheehan was an agent of Lewis. If he had been, such agency would not oblige him to make good Lewis' nonperformance of his contract. He was a lowly employee to do menial tasks for Lewis, to keep time on the workmen and to apply the moneys he had deposited to the payment

of labor and materials. The relationship of principal and agent works the other way—the principal is bound by the acts of the agent, if the agency covers the act in question.

The finding that the loan was a part of the building contract is utterly without support other than that they were contemporaneous. Lewis told Mrs. Ebner that appellants "had put up the $5500 for their home." Relying upon their agreement with respondents to give them a note and trust deed for his money, Sheehan placed it in a bank from which it was used for the account of respondents. Sheehan's employment to perform the tasks of timekeeper was not related to his agreement to make the loan of his savings to respondents. He was to get no part of the profits to be earned by Lewis' construction of the house; no compensation save only his wages as an employee. The finding that appellants did not pay respondents any part of the $5,500 is utterly without support. On the contrary, the evidence already recited proves that they paid more to respondents than the amount of the loan, and Lewis was not forbidden to disburse the money with his own hand or by an employee.

From the foregoing it follows that the conclusion that the note and trust deed are void is without evidential foundation. Neither is there any basis in fact for the judgment that appellants surrender the note and trust deed or that they have no interest in the property described in the latter instrument. They parted in good faith with their substance on respondents' agreement to return it according to the terms of the note. The sudden departure of Lewis without completing the structure he had undertaken for respondents is not a reason for attaching his obligation to an unfortunate couple who had supplied the sinews wherewith to provide shelter for respondents at 6 per cent per annum with the privilege of obtaining another loan on better terms.

Having contracted with appellants it was respondents' duty to offer to do equity as a basis for rescinding the agreement. (Civ. Code, § 1691.) Having failed to offer to restore the moneys advanced for their account, they are estopped to demand a cancellation of the note and trust deed. (*Lanktree* v. *Spring Mountain Acres,* 213 Cal. 362, 366 [2 P.2d 338].) No such act seems to have been entertained by respondents. They would keep the house and lot for which nearly $8,000 had been expended, of which they had advanced only $2,400. They would cancel their debt to appellants without even an offer to repay a portion of the fund advanced. They would

condemn the conduct of Lewis yet use it as a sword to enrich themselves at the expense of appellants. Where appellants have loaned their money to respondents to enable them to build their home, the latter cannot defeat their obligation by asserting that the loan to them was "a part of Lewis' contract to build the house." The facts that after Lewis' failure to perform his agreement to complete the house respondents paid out $600 to make the house tenantable and discharged a mechanic's lien for $228.83 are in no sense related to their duty to discharge their obligations to appellants.

In view of the foregoing it is unnecessary to discuss the rulings of the court at the trial.

The judgment is reversed with instructions to make findings and enter judgment for appellants in accordance with this opinion.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied November 6, 1950, and respondents' petition for a hearing by the Supreme Court was denied December 14, 1950.