# NATIONAL LUMBER COMPANY v. FARMER & SON, INC., AND OTHERS.
# SECURITY NATIONAL BANK & TRUST COMPANY OF FARIBAULT, RESPONDENT.

87 N. W. (2d) 32.

November 22, 1957—No. 37,178.

*Gustav C. Axelrod, Edward J. Cincera, Streater & Murphy, Urban J. Steimann,* and *Lucius A. Smith,* for appellants.

*Rodger L. Nordbye,* for respondent.

DELL, CHIEF JUSTICE.

This is an action to enforce a lien for materials used in the improvement of certain real estate as provided for by M. S. A. 514.01.[1] The trial court found that the liens of the plaintiff and of some of the defendant lienholders were valid but that the mortgage of the defendant Security National Bank & Trust Company of Faribault, Minnesota, constituted a first lien upon the property. From an order denying a motion for amended findings or in the alternative for a new trial, plaintiff and the defendant lienholders appeal.

On April 6, 1954, defendant Botsford Lumber Company erected a fence for defendant Emily P. Gipson around a large tree on the boulevard in front of her premises. The fence, four feet high and consisting of turkey mesh strung around four cedar posts, was to protect the tree from heavy machinery although it is not entirely clear from the record whether the protection was to be from machinery then being used to grade the street adjacent to her premises or from the bulldozer which would later be used in excavating for the dwelling she intended to erect on said premises. The cost of the material and labor was $14.52 which was paid in full to the Botsford Lumber Company on April 21.

On April 28 Mrs. Gipson applied to the defendant bank for a

---

[1] M. S. A. 514.01 provides that "Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery * * *, whether under contract with the owner of such real estate or at the instance of any agent, trustee, contractor or subcontractor of such owner, shall have a lien upon the improvement, and upon the land on which it is situated or to which it may be removed, for the price or value of such contribution; that is to say, for the erection, alteration, repair, or removal of any building, fixture, bridge, wharf, fence, or other structure thereon, or for grading, filling in, or excavating the same, * * *."

loan to be used in erecting said dwelling. The total cost of the construction was estimated at $21,100. She had $12,000 of her own money on deposit in said bank available for construction and the bank agreed to lend her $10,000. Mrs. Gipson was advised by the bank that she could minimize her expenses by using her money first since interest would not accrue on the loan until the funds of the bank were actually expended or paid over to the borrower as needed, and she decided to adopt this procedure.

The abstract to the property was examined and some inspection of the premises was made by an attorney for the bank. On May 8 Mrs. Gipson executed a note to the bank for $10,000 secured by a mortgage for a like sum on her property. The bank recorded the mortgage on May 10 and later sent a confirmation of the loan agreement to Mrs. Gipson.

Whatever Mrs. Gipson's arrangements were with the contractor, defendant Farmer & Son, Inc., the work on the new dwelling was started on May 24 when one of the subcontractors, defendant B. H. Heselton, began excavating for the basement. Heselton testified that the contractor notified him to start digging the basement a few days before he commenced work and that he had been first contacted in relation to this job not more than a week prior to that time.

During the remainder of 1954 and for a part of 1955 various subcontractors, including the plaintiff and the Botsford Lumber Company, furnished labor and materials for the construction of the dwelling. They looked to Farmer & Son, Inc., the contractor, for payment but, as a precautionary measure, filed their statutory liens against the premises. Meanwhile Mrs. Gipson, and later the bank, with approval of Mrs. Gipson, made periodic payments to Farmer & Son, Inc., upon the architect's certificates. Farmer & Son, Inc., did not pay the materialmen and, in fact, was in bankruptcy at the time of the trial.

Plaintiff, one of the subcontractors, brought this action to enforce his lien and named, as parties defendant, Mrs. Gipson, the bank, the contractor, and several subcontractors. His claim is that the fence erected by the Botsford Lumber Company in April 1954, which is one of the improvements named in and covered by § 514.01, constituted the "actual and visible beginning of the improvement on the

ground" which is a condition precedent to the attachment of a lien as against a subsequent bona fide mortgagee under § 514.05.[2]

■ Appellants' first contention is that the fence constituted an actual visible improvement upon Mrs. Gipson's premises. Of this there can be no doubt. Nor can there be any doubt that the cost of the fence would have been a lienable item if the bill for the material and labor involved had not been paid. However, Mrs. Gipson's payment to the Botsford Lumber Company on April 21 extinguished any claim that the latter might have held in so far as the fence itself was concerned. The real question before us is whether all the labor and material furnished subsequent to the execution and recording of the mortgage can be referred back to the erection of the fence for lien purposes. It is not important that the company which provided the fence later furnished materials in the construction of the dwelling for it need only be demonstrated that the fence constituted "the actual and visible beginning of the improvement on the ground" in order for the liens to attach. When a building is erected all liens attach at the time the first item of material or labor is furnished on the ground.[3]

Two cases appear to have a direct bearing on the question involved. In Lamoreaux v. Andersch, 128 Minn. 261, 150 N. W. 908, L. R. A. 1915D, 204, the defendants employed architects to design and construct a building. Prior to their employment defendants had caused a survey to be made and an old barn on the property torn down and removed. In a suit against the defendants by the architects, after the contract had been repudiated, the architects were permitted to prevail under a liberal interpretation of the statute but it was also held (128 Minn. 263,

---

[2]Section 514.05 provides that "* * * As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior *to the actual and visible beginning of the improvement on the ground,* but a person having a contract for the furnishing of labor, skill, material, or machinery for such improvement, may file for record with the register of deeds of the county within which the premises are situated, * * * a brief statement of the nature of such contract, which statement shall be notice of his lien for the contract price or value of all contributions to such improvement thereafter made by him or at his instance." (Italics supplied.)

[3]Erickson v. Ireland, 134 Minn. 156, 158 N. W. 918.

150 N. W. 909) "It appears conclusively, we think, that there was no improvement on the land. The removal of the old barn by defendants and the making of the survey cannot be considered as an improvement. This was done entirely independently of the contract with plaintiffs [the architects], and clearly plaintiffs contributed nothing to this work."

In Carr-Cullen Co. v. Deming, 176 Minn. 1, 222 N. W. 507, after a mortgage was executed but before it was recorded, the wrecking and removal of an old building on the premises involved was commenced, and the work was finished on the day the mortgage was recorded. Two days after the recording, an excavation for a basement for a new building began. This court held that the wrecking and removal of the old building were not within the statutory concept of visible improvement.

Recently we considered this problem in Brettschneider v. Wellman, 230 Minn. 225, 41 N. W. (2d) 255, which appellants claim is controlling here. In that case, prior to the application for and the acceptance of a loan and the execution of the mortgage, the contractor had done some brushing on defendant's lot and had excavated the basement. In actions to foreclose the mechanics liens we held that the construction began (230 Minn. 232, 41 N. W. [2d] 259) "with the digging of the basement" and that the digging was an integral and inseparable part of the project. Accordingly the lienholders prevailed.

Thus it appears that the line of distinction is whether or not the improvement bears directly on the construction of the building rather than whether it is a part of the overall project involved. In the Lamoreaux case it was the architect's plans rather than the survey or building removal which constituted a beginning. And where excavation is involved, it appears that the excavation itself or something directly connected therewith, rather than any prior activity, constitutes the beginning of the visible improvement. In the Carr-Cullen case had the recording and the excavation been reversed the result might well have been different.

Viewed in this light the Brettschneider case is readily distinguishable from the instant case. There the excavation preceded the security transaction; here it was subsequent to it. In that case the court found

that the actual and visible improvement had commenced because the digging of the basement was inseparable from the later construction. In the instant case the court found that the fencing was not the beginning of the improvement within the meaning of § 514.05. To reach this result the court necessarily must have concluded that the erection of the fence was severable and separable from the later work. Upon the record the conclusion seems justified.

██ Finally appellants contend that the mortgage is not entitled to priority because the payments made by the bank were voluntary rather than obligatory. The court found and determined that the mortgage was given to secure future advances which were obligatory on the mortgagee. There is ample evidence in the record to support this finding. Where this is the case and where the advances are, in fact, later made, the mortgage takes priority over all mechanics liens which attach after the mortgage is given but before the advances are made.[4]

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

---

[4]Erickson v. Ireland, 134 Minn. 156, 158 N. W. 918.