MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MINOT, Plaintiff and Appellee,

v.

James Lee MILLER a/k/a James L. Miller and Ann Miller, his wife, Defendants and Appellants,

Econo Farm & Home Centers, Inc.; and Interior Mart, Defendants.

Civ. No. 10553.

Supreme Court of North Dakota.

May 17, 1984.

Anderson & Dobrovolny, Minot, and Rolfstad, Winkjer, McKennett, Kaiser, Stenehjem & Walters, Williston, for plaintiff and appellee; argued by Mark Stenehjem, Williston.

MacMaster & Bonner, Williston, for appellants; argued by Margy Bonner, Williston.

Bjella, Neff, Rathert, Wahl & Eiken, Williston, for defendant Econo Farm & Home Centers, Inc.

Anseth & Zander, Williston, for defendant Interior Mart.

ERICKSTAD, Chief Justice.

James and Ann Miller have appealed from a judgment of foreclosure entered in an action brought by Midwest Federal Savings and Loan Association of Minot. The other parties have not appealed. We affirm.

In 1979, the Millers purchased a lot and began construction of a home. They subsequently received and accepted offers of commitment for construction financing and

permanent financing from Midwest Federal. On April 14, 1980, they executed a mortgage note in the amount of $60,000 due and payable on May 1, 1981, and a mortgage to Midwest.

The loan was funded on April 24, 1980, and the Millers' building contractor, Kirkland Construction, presented James Miller with a statement in the amount of $30,000 for labor and materials. That same day, Miller signed the statement and presented it to a Midwest employee who issued a check for $30,000 payable to Kirkland. The house was substantially less than one-half complete at that time.

On May 5, 1980, Kirkland presented Mr. Miller with a statement for $15,000. Miller presented the statement to Midwest without signing it. Midwest determined that more work would have to be done on the house before additional loan funds would be paid and did not pay the statement.

Kirkland discontinued work on the house and the Millers apparently have been unable to recover any of the funds paid. After Kirkland abandoned the project, unpaid material suppliers filed liens. Midwest paid out all of the loan funds to Kirkland, various suppliers and subcontractors, and to interest payments due on the construction loan. The house is approximately 90 percent complete. Midwest refused to provide the Millers with permanent financing for the house.

The Millers raise as issues whether or not (1) Midwest was negligent in its supervision of the loan; (2) the mortgage and note are partially unenforceable for lack of consideration; and (3) Midwest is obligated to provide permanent financing.

The Millers first assert that the trial court erred in failing to find that Midwest was negligent in managing the loan account. They assert that Midwest was negligent in issuing a check for $30,000 to Kirkland without making an investigation to determine if the payment was warranted, using a payee lien waiver, permitting payment for expenses not yet incurred, and for failing to warn them of the risks involved in paying for materials not yet pur-

chased and labor not yet performed. We find these assertions to be without merit.

The offer of commitment for construction financing specifically provides that: "Bills incurred for the construction of the project will be approved by you [Mr. and Mrs. Miller] and submitted to us [Midwest] for payment. These bills will be paid from your account and payee lien waivers will be required...."

Kirkland presented James Miller with a statement in the amount of $30,000, which purportedly was for labor, rock, and plumbing fixtures. The Millers conceded in their brief that James Miller "knew the majority of the labor claimed was for future work and the materials consisting of rock and plumbing fixtures were not yet purchased, ..." James signed the statement, presented it to an employee of Midwest, requested that Kirkland be paid the $30,000, and Midwest issued a check payable to Kirkland.

■ We have examined the decisions relied upon by the Millers and have found them all to be readily distinguishable. In none of the decisions cited was a construction lender held to have been negligent for doing what the borrower requested. If anyone must bear the loss in this unfortunate matter, it must be the Millers, who induced Midwest to make the payment. Midwest was not negligent in paying Kirkland after James Miller signed and presented the Kirkland statement and requested that Kirkland be paid. James Miller's presentation of the statement, with his signature, to Midwest and his request that Kirkland be paid the $30,000 constituted approval of the bill and a representation to Midwest that payment was proper and warranted. Midwest complied with the commitment for construction financing and with the Millers' request that Kirkland be paid. The Millers cannot now be heard to complain that Midwest did what they asked it to do.

■ The Millers assert under their second issue that the "mortgage failed to the extent that the Millers did not benefit from the $30,000.00 paid to Kirkland Construc-

tion." They rely on the rule stated in 59 C.J.S. *Mortgages* § 96 (1949):

"A mortgage ceases to be an enforceable security when the consideration fails, and where there is a partial failure of consideration the mortgage becomes unenforceable to the extent of such failure."

They also rely on *Brettschneider v. Wellman*, 230 Minn. 225, 41 N.W.2d 255 (1950). We find reliance on the cited authorities to be misplaced.

The first paragraph under the rule in 59 C.J.S. *Mortgages* § 96 (1949) states:

"A mortgage originally supported by an adequate consideration ceases to be an enforceable security when the consideration fails, and where there is a partial failure of consideration the mortgage becomes unenforceable to the extent of such failure. So a mortgage is unenforceable where it is for advances to be made to the mortgagor or credits to be given him which have not been furnished, or for money to be paid out on the mortgagor's account which has not in fact been so paid, or for goods to be furnished to the mortgagor which have not been delivered, or for services to be rendered to him which have not been performed; but, where the mortgage is given in consideration of advances and payments on the mortgagor's account, the fact that none of the proceeds of the mortgage ever come directly into the hands of the mortgagor does not constitute a failure of consideration." (Footnotes omitted.)

There was no failure of consideration in the case at bar. Midwest did furnish the advances to be made. Midwest did pay money out on the Millers' account. Goods and services were delivered and rendered to and for the Millers. At least some of the proceeds came into the Millers' hands by being applied toward the construction of their house.

Reliance on *Brettschneider, supra,* is similarly misplaced. In affirming the trial court's finding that there was a failure of consideration, the Minnesota Supreme Court quoted the trial court, 41 N.W.2d at 258:

" 'The evidence clearly shows that the association did not make the disbursements at the instance or request of the mortgagors. It did not rely upon the representations of the mortgagors nor of their architects. It made no investigations of its own. It merely paid out, from time to time, eighty per cent of the bills without questioning the amount and without regard to the contract price or the status of the work. It was this foolish practice that brought about the catastrophe.' "

In the instant case, Midwest disbursed the $30,000 to Kirkland at the instance or request of the Millers and did rely upon the representation of the Millers that payment was proper. The "foolish practice" that brought about the Millers' "catastrophe" was their request that Midwest pay Kirkland $30,000 even though James Miller knew that most of the labor claimed was not yet done and that the materials claimed had not yet been purchased.

If there was a failure of consideration, it was with relation to the agreement between Kirkland and the Millers. There was no failure of consideration with relation to the agreement between the Millers and Midwest. The Millers received from Midwest precisely what they asked for—payment of $30,000 to Kirkland. "[Midwest] was under contract to loan the money; [It] advanced it. Therefore there was no failure of consideration." *Ebner v. Sheehan,* 99 Cal.App.2d 860, 222 P.2d 888, 890 (1950).

■ Finally, the Millers assert that Midwest is obligated to provide them with permanent financing because the offer of commitment for permanent financing contains "no conditions or contingencies dealing with maintaining the lien status for Midwest or requiring completion of the construction."

A witness for Midwest testified that when a commitment for permanent financing is made there are conditions that the

house be 100 percent complete and be free and clear of any additional liens or encumbrances during the construction period. When asked if Midwest's loan officer, at the time the Millers' loan was approved, had said there were any conditions on permanent financing, James Miller testified: "Only that the house would have to be completed." Thus, regardless of the specific language used in the offer of commitment for permanent financing, the Millers knew one of the conditions was that the home must be completed. The mortgage sought to be foreclosed by Midwest also specifies that "the borrowers agree to complete construction."

It is undisputed that the house has not been completed. The Millers were required to complete the house in order to receive permanent financing from Midwest. Because the house has not been completed, Midwest is not obligated to provide permanent financing.

With regard to the liens filed by unpaid material suppliers, the mortgage involved provides that the Millers "agree that no fixtures will be installed subject to a vendor's lien or other liens." The Millers were bound to see to it that the house was built free of liens or to clear any liens filed in order to secure permanent financing. We need not address the validity of the liens filed. "Questions, the answers to which are not necessary to the determination of a case, need not be considered." (Citations omitted.) *Hospital Services, Inc. v. Brooks,* 229 N.W.2d 69, 71 (N.D.1975).

The judgment is affirmed.

VANDE WALLE, PEDERSON, GIERKE and SAND, JJ., concur.