**BIG LAKE LUMBER, INC., Appellant,**

v.

**SECURITY PROPERTY INVESTMENTS, INC., et al., Defendants,**

**21st Century Bank, Respondent,**

**Wright Lumber & Millwork, Inc., Respondent,**

**Pearson Plumbing Corp., Respondent,**

**J. DesMarais Construction, Inc., Appellant.**

No. A11–2220.

Supreme Court of Minnesota.

Aug. 28, 2013.

Karl E. Robinson, Hellmuth & Johnson, PLLC, Edina, Minnesota, for appellant Big Lake Lumber, Inc.

Steven R. Little, Steven F. Buterin, Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota, for respondent 21st Century Bank.

Gerald W. Von Korff, Rinke Noonan, St. Cloud, Minnesota, for appellant J. DesMarais Construction, Inc.

Bradley N. Beisel, David J. Krco, Beisel & Dunlevy, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Land Title Association.

## OPINION

ANDERSON, Justice.

The question presented in this case is whether the court of appeals erred when it reversed the district court's lien priority decision by applying a new "integrated analysis" to find that the mortgage of respondent 21st Century Bank (the Bank) was superior to the mechanic's liens of appellants Big Lake Lumber, Inc. and J. DesMarais Construction, Inc. Following a bench trial, the district court found that Big Lake Lumber and DesMarais Construction contributed to the same improvement project as Wruck Excavating. Accordingly, the district court concluded that the mechanic's liens of Big Lake Lumber and DesMarais Construction related back to the date Wruck commenced work on the

improvement project, and therefore had priority over the mortgage of the Bank. The court of appeals reversed. Because we conclude that the court of appeals erred by adopting and then applying a new "integrated analysis" to find the Bank's mortgage superior to the liens, and that the district court did not clearly err when it found that the liens of Big Lake Lumber and DesMarais Construction related back to the actual and visible beginning of the improvement by Wruck, we reverse.

In 2005, Mark Hilde, through a company owned by him, purchased a vacant lot in Zimmerman.[1] The property was heavily wooded and not improved or ready for residential construction. Shortly after the purchase, Hilde began to prepare the property for the building of a "spec home."[2] More specifically, Hilde had a survey performed and soil samples taken to determine whether the property was suitable for the construction of a home. In addition, Big Lake Lumber prepared a blueprint of the home that Hilde wanted to build on the property. Hilde also hired Wruck to haul dirt to the property, cut down trees and underbrush, clear a rough driving path and building pad, haul trees and stumps away, and design a septic system for the home.

In early 2006 Hilde contacted a real estate agent to help him sell the property with the spec home constructed on it. Through one of its associates, respondent Security Property Investments agreed to purchase the property with the spec home. In July 2006 Hilde sent out requests for proposals to contractors regarding the work necessary to construct the home.

He also had the property staked to facilitate installation of silt fencing and to mark the final location of the home site. Around the same time, Hilde purchased and personally installed about 100 feet of silt fencing on the property. In addition, sometime before October 2006, miscellaneous construction materials, including drain tile and a sump basket, were delivered to the property.

On October 27, 2006, the Bank recorded a $290,000 mortgage against the property to finance Security Property's purchase of the property and the home construction. After the recording of the mortgage, Big Lake Lumber, DesMarais Construction, and Wruck each performed work on the property, including further excavation, framing of the home, and other improvements to the property. Wruck also installed the septic system it had designed in August 2005. Hilde, who had been acting as general contractor, eventually left the project. DesMarais Construction took over as general contractor in January 2007 and oversaw the completion of the home.

In March 2007 Big Lake Lumber recorded its mechanic's lien for $43,475 for lumber and building materials. In July 2007 DesMarais Construction recorded its mechanic's lien for $103,985 for materials and labor.[3] After Security Property defaulted, the Bank foreclosed on the mortgage. Big Lake Lumber then commenced this mechanic's lien foreclosure action. On cross-motions for partial summary judgment, the district court concluded that the mechanic's liens had priority over the mortgage. The court of appeals reversed and remanded for further proceedings,

---

1. The lot is located at 26080 141st Street NW, Zimmerman, Minnesota, and is legally described as Lot 1, Block 1, Fox Hollow.

2. A "spec home" is a house built in anticipation that a purchaser will buy it after construction is completed. *See Jutting v. Hendrix*, 606 N.W.2d 140, 141 n. 2 (S.D.2000).

3. DesMarais Construction later reduced the original principal amount of its mechanic's lien claim to $68,399.

concluding that "there is a genuine issue of material fact as to whether Wruck's initial clearing work and [Big Lake Lumber's and DesMarais Construction's] work were performed as part of the same improvement," and "if so, whether the improvement was abandoned." *Big Lake Lumber, Inc. v. Sec. Prop. Invs., Inc. (Big Lake Lumber I)*, No. A09–2129, 2010 WL 3632451, at *4–5 (Minn.App. Sept. 21, 2010).

Following a bench trial on remand, the district court again concluded that the mechanic's liens had priority over the mortgage. The district court found that the work performed by Wruck in 2005 "resulted in an open, obvious, and noticeable clearing upon which a driveway and residential home could be" built and that Wruck's "excavation work . . . was visible, and was performed for the undisputed purpose of clearing the Property to create a home site." Together with the work of Big Lake Lumber and DesMarais Construction, the district court concluded that Wruck's 2005 work "forms the single improvement of constructing a home on the Property," and therefore the liens filed by Big Lake Lumber and DesMarais Construction related back to "the commencement of the improvement at the time of Wruck's work in August 2005."

The court of appeals reversed. *Big Lake Lumber, Inc. v. Sec. Prop. Invs., Inc. (Big Lake Lumber II)*, 820 N.W.2d 253, 263 (Minn.App.2012). In doing so, the court of appeals adopted a new "integrated analysis" to apply to "all disputes over the priority of mechanic's liens and mortgages under section 514.05." *Id.* at 260–61. Applying this new analysis, the court of appeals held as a matter of law that Big Lake Lumber and DesMarais Construction

did not contribute material and labor to one continuous project of improvement, and therefore the mechanic's liens did not relate back to the pre-mortgage excavation work performed by Wruck in 2005. *Id.* at 259–60, 263. We granted the separate petitions for further review of Big Lake Lumber and DesMarais Construction.

## I.

The focus of our analysis is the district court's order finding that the mechanic's liens of Big Lake Lumber and DesMarais Construction had priority over the Bank's mortgage. Minnesota Statutes § 514.05, subd. 1 (2012), governs the priority of mechanic's liens, including with respect to a bona fide mortgagee without actual or record notice of an existing lien. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 171 (Minn.2010) ("Section 514.05 governs when a mechanic's lien attaches and provides for potentially different dates of attachment depending" on the status of the person the lien is asserted against). As against a bona fide mortgagee, "no lien shall attach prior to the actual and visible beginning of the improvement on the ground." Minn. Stat. § 514.05, subd. 1. As the court of appeals noted, the parties' dispute concerns whether Big Lake Lumber and DesMarais Construction contributed to the same improvement begun by Wruck in August 2005. This "question . . . turns on the meaning of section 514.05, which is a question of law that we review de novo." *Riverview Muir Doran, LLC*, 790 N.W.2d at 170. We therefore begin with the statutory requirements for resolving priority disputes between lien claimants and mortgagees.[4]

4. The purpose of the priority scheme in Minn. Stat. § 514.05, subd. 1, is twofold: it protects the rights of "a mortgagee who advances its

money for the improvement of the premises as against lien claimants who file their claims after the mortgage is recorded," *Reuben E.*

### A.

■ We have said that mechanic's liens " 'are purely creatures of statutes and the rights of the parties are governed by the language of the statutes.' " *Riverview Muir Doran, LLC,* 790 N.W.2d at 170 (quoting *M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.,* 279 Minn. 278, 283, 156 N.W.2d 748, 751 (1968)); *see also Duininck Bros. & Gilchrist v. Brandondale Chaska Corp.,* 311 Minn. 291, 293, 248 N.W.2d 743, 744 (1976) ("[M]echanics liens are purely statutory in nature, and the jurisdiction of our courts in this area is thus strictly governed by the statutes."). We therefore begin with the words of the statute that applies in this case:

> All liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage ... not then of record, unless the lienholder had actual notice thereof. As against a bona fide ... mortgagee ... without actual or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground....

Minn.Stat. § 514.05, subd. 1.

Three important rules emerge from the plain language of the priority framework in section 514.05, subdivision 1. The first rule establishes that, "as against the owner of the land," a mechanic's lien generally attaches when "the first item of material or labor is furnished upon the premises for the beginning of the improvement." *Id.* Second, this "first item" lien is "preferred" over "any mortgage or other encumbrance not then of record, unless the lienholder

had actual notice" of such an encumbrance or mortgage. *Id.* Third, as against a bona fide mortgagee without actual or record notice, a lien does not attach "prior to the actual and visible beginning of the improvement on the ground." *Id.*

The third rule of section 514.05, subdivision 1, allows certain liens to "relate back" to the beginning of an improvement. *See Brettschneider v. Wellman,* 230 Minn. 225, 232–33, 41 N.W.2d 255, 260 (1950) (finding that a lien for work done subsequent to a mortgage can relate back to improvements done prior to the mortgage where the early improvements were done "in contemplation of and as a part of the entire project"); *Glass v. Freeberg,* 50 Minn. 386, 390, 52 N.W. 900, 901 (1892) ("The whole work, being done in the performance of one entire contract with the owner, is to be deemed a unit ... and all liens therefor ... are co-ordinate, and all attach by relation as of the date of the commencement of the work."); *see also Nat'l Lumber Co. v. Farmer & Son, Inc.,* 251 Minn. 100, 103, 87 N.W.2d 32, 35 (1957) ("The real question ... is whether all the labor and material furnished subsequent to the execution and recording of the mortgage can be referred back ... for lien purposes."). Thus, as against a bona fide mortgagee, priority is determined by identifying "the actual and visible beginning of the improvement on the ground." Minn.Stat. § 514.05, subd. 1; *see also Nat'l Lumber Co.,* 251 Minn. at 103, 87 N.W.2d at 35 ("[I]t need only be demonstrated that the fence [erected before the mortgage was recorded] constituted 'the actual and visible beginning of the improvement on the ground' in order for the liens to attach.").

*Johnson Co. v. Phelps,* 279 Minn. 107, 112, 156 N.W.2d 247, 251 (1968), and it protects "the rights of workmen and materialmen who furnish labor and materials in the improve-

ment of real estate," *Rochester's Suburban Lumber Co. v. Slocumb,* 282 Minn. 124, 129, 163 N.W.2d 303, 307 (1968).

Chapter 514 does not provide a definition of "improvement" for the purpose of applying the relation-back rule. We have said, however, that "[t]he 'actual and visible beginning of the improvement on the ground' has a definite meaning." *Reuben E. Johnson Co. v. Phelps,* 279 Minn. 107, 112, 156 N.W.2d 247, 251 (1968); *see also M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.,* 279 Minn. 278, 284, 156 N.W.2d 748, 752 (1968) ("[T]he material or labor furnished for the improvement must represent an actual beginning of the improvement *on the ground* and it must be visible; that is, it must be visible to the extent that a person using reasonable diligence in examining the premises must be able to see it."). Relying on a dictionary definition, we have stated that an "improvement" within the meaning of section 514.05 is a "betterment of real property that enhances its capital value" and "involve[s] the expenditure of labor, [is] permanent in nature, . . . and [is] an alteration" of the property. *Kloster–Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 63–64, 226 N.W.2d 603, 607 (1975) (citation omitted) (internal quotation marks omitted). We have also said that the "implicit definition" of "improvement" in Minn.Stat. § 514.01 (2012) "[i]n essence . . . makes any contribution to real property of labor, skill, material or machinery for any purpose specified . . . an improvement." *Kloster–Madsen, Inc.,* 303 Minn. at 63–64, 226 N.W.2d at 607; *see also* Minn.Stat. § 514.01 (providing a lien for anyone who "contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery").

### B.

With this statutory framework in mind, we next consider whether the "integrated analysis" the court of appeals adopted to apply to "all disputes over the priority of mechanic's liens and mortgages" comports with the plain and unambiguous language of section 514.05. *Big Lake Lumber II,* 820 N.W.2d at 260–61.

The parties do not defend the court of appeals' integrated analysis. Big Lake Lumber and DesMarais Construction contend that the integrated analysis is confusing, flawed, and contrary to the plain language of Minn.Stat. § 514.05, subd. 1, and our precedent. The Bank does not expressly disavow the court of appeals' integrated analysis and acknowledges only that it is consistent with "the long-standing and well-established analytical framework Minnesota courts use to identify separate improvement[s] and resolve issues of priority." [5]

The court of appeals declined to decide whether Wruck's pre-mortgage work "constituted the actual and visible beginning of the improvement on the ground" because it decided that Wruck's work and the work performed by Big Lake Lumber and DesMarais Construction were "not part of one continuous project of improvement to the property." *Big Lake Lumber II,* 820 N.W.2d at 259–60. To reach its conclusion, the court of appeals reviewed "two different but overlapping methods of analysis to determine whether a project of improvement is part of one continuous project to which a lien claimant's contribution relates or is a separate project." *Id.* at 260.

---

**5.** Amicus curiae Minnesota Land Title Association similarly agrees that the court of appeals "may have overreached in setting forth its 'newly integrated analysis,'" and that we should clarify that the court of appeals'

" 'newly integrated analysis' did not establish any new or additional steps or methodology for identifying separate improvements and resolving lien priority under section 514.05."

The first method "involves a determination of whether two projects of improvement to property are separate and therefore not continuous," based on four factors: (1) the parties' intent, (2) the scope of the contracts, (3) the time lapse between projects, and (4) financing. *Big Lake Lumber II*, 820 N.W.2d at 260 (citing *Poured Concrete Found., Inc. v. Andron, Inc.*, 529 N.W.2d 506, 510 (Minn.App.1995), *rev. denied* (Minn. May 31, 1995)). The second method "involves a determination of whether a project of improvement has been abandoned, and consequently is not continuous with a later project, based on the parties' objective manifestations of their intent and the actual and visible condition of the property . . . as revealed by an inspection of the premises." *Id.* (citing *Superior Constr. Servs., Inc. v. Belton*, 749 N.W.2d 388, 391, 393 (Minn.App.2008)). The court of appeals integrated the two analyses into a "single framework for application in *all* disputes over the priority of mechanic's liens and mortgages under section 514.05." *Id.* (emphasis added).[6]

We reject the "integrated analysis" adopted by the court of appeals. We have never established an elaborate framework to determine the actual and visible beginning of a project of improvement for the purpose of determining priority between a mortgagee and lien claimants under section 514.05, subdivision 1. Nor does the plain language of Minn.Stat. § 514.05, subd. 1, require a "continuous project of improvement" for a lienholder's priority claim to succeed. Instead, the lien claimant's post-mortgage work must relate back to pre-mortgage work that was the "actual and visible beginning of the improvement." Minn.Stat. § 514.05, subd. 1. This fact-specific determination considers whether the pre-mortgage work on which the lien claimant relies "bears directly on" the project of improvement and not merely on the "overall project involved." *Nat'l Lumber Co.*, 251 Minn. at 104, 87 N.W.2d at 36. We have also said that post-mortgage work can relate back to pre-mortgage work that is "a part and parcel of the work" of the improvement. *See Brettschneider*, 230 Minn. at 233, 41 N.W.2d at 260 ("[T]he work of excavating the basement was clearly a part and parcel of the work of building the house. It was included in the . . . contract to build. . . . The court could well find that it constituted the beginning of the construction of the house.").

Our precedent reflects a broad view of the statutory requirements for resolving lien priority disputes, recognizing that on appellate review we consider only whether the evidence supports the district court's findings of fact. *New Prague Lumber & Readi–Mix Co. v. Bastyr*, 263 Minn. 249, 254, 117 N.W.2d 7, 10 (1962). We do not mean to say that the factors on which the court of appeals relied have no place in resolving priority disputes under Minn. Stat. § 514.05, subd. 1. For example, in the closely related context of determining whether a mechanic's lien is timely filed under Minn.Stat. § 514.08 (2012), we have relied on factors such as the nature of the contracts, the lapse of time between various stages in the project, and the intent of the parties. *See, e.g., Kahle v. McClary*, 255 Minn. 239, 240–41, 96 N.W.2d 243, 245–46 (1959) (considering the "general purpose of the contract" and "a long lapse of time following the last major work" in deciding "whether the mechanics lien . . . was filed within sufficient time"). And, in the appropriate case, one or more of the

---

6. Despite integrating these two methods of analysis, the court of appeals based its decision only on "the four factors of the parties' intent, the contracts' scopes, financing, and time lapse, without concluding that the project of improvement contributed to by Wruck was abandoned." *Big Lake Lumber II*, 820 N.W.2d at 263.

factors to which the court of appeals looked may be relevant to resolving a priority claim under Minn.Stat. § 514.05. *See, e.g., Brettschneider*, 230 Minn. at 233, 41 N.W.2d at 260 (concluding that "[t]he mere lapse of time between the excavating and the building did not prevent the work from being continuous"). But, because we conclude that the question of lien priority under Minn.Stat. § 514.05, subd. 1, must be answered by reference to the language of the statute, rather than a multi-factor test that imposes additional requirements beyond the statutory language, we reject the court of appeals' integrated analysis.[7]

## II.

■ Having rejected the court of appeals' integrated analysis, we next consider whether the evidence in the record supports the district court's finding that Wruck's work in 2005 constituted the actual and visible beginning of the improvement: the construction of a home. On appeal, "our sole purpose is to determine whether the evidence reasonably sustains the finding[s] of the [district] court."

*Kahle*, 255 Minn. at 242, 96 N.W.2d at 246; *see also New Prague Lumber & Readi-Mix Co.*, 263 Minn. at 254, 117 N.W.2d at 10 ("The only questions with which this court is concerned are whether the record supports the findings of fact and whether the findings of fact support the conclusions of law."); *Barrett v. Hampe*, 237 Minn. 80, 84, 53 N.W.2d 803, 806 (1952) ("[T]he question is whether the findings are supported by the evidence.").

■ In this case, the record supports the district court's finding that the work by Wruck in 2005 began the improvement. Wruck's work "clear[ed] the Property to create a home site." This work was also an actual and visible beginning, as demonstrated by the district court's finding that Wruck's 2005 work "resulted in an open, obvious, and noticeable clearing upon which a driveway and residential home could be ... built." Finally, the record supports the district court's finding that Big Lake Lumber and DesMarais Construction contributed to the same project of improvement—the construction of a home—begun by Wruck in August 2005.[8]

---

**7.** One additional argument raised by the parties warrants comment. Big Lake Lumber and DesMarais Construction contend that the court of appeals' "integrated analysis" effectively eliminates the duty of a purchaser or mortgagee to inspect the property for any actual or visible improvements before the transaction is completed. Big Lake Lumber and DesMarais Construction cite *Kloster-Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 226 N.W.2d 603 (1975), in support of their argument. In that case, we held that Minn.Stat. § 514.05 *"in effect* imposes a duty on a purchaser or encumbrancer to examine the premises for the beginning of any actual and visible improvements before a sale or mortgage transaction is completed." *Kloster-Madsen, Inc.*, 303 Minn. at 64, 226 N.W.2d at 607 (emphasis added). But, as the Bank observes, the decision in *Kloster-Madsen, Inc.*, does not impose a duty on a purchaser or mortgagee to inspect a property before the sale or mortgage transaction is completed.

Rather, Minn.Stat. § 514.05 *"in effect"* imposes that duty on a purchaser or mortgagee because a purchaser or mortgagee otherwise assumes the risk that the encumbrance or mortgage will be subordinate to a mechanic's lien. *Kloster-Madsen, Inc.*, 303 Minn. at 64, 226 N.W.2d at 607 (emphasis added). To be sure, pre-mortgage property inspections by a mortgagee may very well be a prudent business practice in avoiding mechanic's lien liability. But Minn.Stat. § 514.05 does not mandate these inspections, and the priority of a bona fide mortgagee against mechanic's liens does not depend on the completion of these inspections.

**8.** The district court's discussion of the key finding in this case occurred in the section of its order labeled "conclusions of law." Thus, the district court appears to have erroneously designated its finding as a conclusion of law. But we have long held that "a fact found by the court, although expressed as a conclusion

We reach these conclusions for three reasons.

First, the record reflects that Hilde intended to build a home on the property when he purchased it in 2005 and the pre-mortgage work undertaken by Wruck prepared the property for that purpose: the house was later built on the building pad that Wruck created, the driveway was built on the same path that Wruck cleared, and the septic system that Wruck designed was installed in the home. To be sure, Hilde may have initially contemplated that the home would be a personal residence—at least, for a period of time. But even if Hilde's intent changed—a matter that is not free from doubt—the parties agree that a house was eventually constructed on the property.[9] Because Wruck's 2005 work made the property more useful for this purpose, that work contributed to the improvement of building a house on the property. *See Kloster–Madsen, Inc.*, 303 Minn. at 63, 226 N.W.2d at 607.

Second, even though 14 months passed between Wruck's work in 2005 and the recording of the mortgage in 2006, during that period Hilde installed silt fencing on the property, continued to search for contractors to do work at the site to construct a home, staked the property to facilitate the location of the home site within the property, and received deliveries of construction materials at the property site. Although some of this work, such as staking the property, cannot constitute the "actual and visible *beginning* of the improvement on the ground" under Minn.Stat. § 514.05, subd. 2 (emphasis added), Hilde's ability to take these steps was facilitated by Wruck's 2005 work and demonstrates that the improvement—building a home— had begun before the mortgage was recorded. In other words, Wruck's 2005 work was the "actual and visible beginning of the improvement," Minn.Stat. § 514.05, subd. 1, to which Big Lake Lumber and DesMarais Construction later contributed.

Finally, it is true that the source of financing for the work performed before and after the recording of the mortgage differed. Hilde paid Wruck for the work in August 2005 directly, while the work of Big Lake Lumber and DesMarais Construction was financed through a mortgage obtained through the Bank by other parties. Even so, Wruck's pre-mortgage work and the post-mortgage work by Big Lake Lumber and DesMarais Construction were performed for the same purpose: the construction of a home. The different sources of financing, while relevant, are not sufficient to establish that the district court erred when it found that Big Lake Lumber and DesMarais Construction contributed to the same improvement as Wruck.

The court of appeals and the Bank view the evidence differently. We do not, however, disturb a district court's factual findings on appeal unless those findings are clearly erroneous. Minn. R. Civ. P. 52.01. Here, we conclude that ample support in the record exists to uphold the district

of law, will be treated upon appeal as a finding of fact." *Graphic Arts Educ. Found. v. State*, 240 Minn. 143, 145–46, 59 N.W.2d 841, 844 (1953).

9. The court of appeals overwhelmingly focused on Hilde's intent. Specifically, the court of appeals found that "Hilde contracted Wruck to perform excavation work in August 2005 for the purpose of constructing a personal residence on the property for Hilde and his wife." *Big Lake Lumber II*, 820 N.W.2d at 262. But Wruck testified that Hilde hired him in August 2005 to build "a spec house." And while Hilde considered constructing a personal residence, he also testified that, at the time, it was common for him "to build a house, live in it, sell it, [and] go on to the next one."

court's finding that Wruck's 2005 work was the actual and visible beginning of the improvement, that Big Lake Lumber and DesMarais Construction contributed to the same improvement, and therefore that the liens of Big Lake Lumber and DesMarais Construction relate back to Wruck's work.

In sum, we reject the "integrated analysis" adopted by the court of appeals. We also conclude that the district court did not clearly err when it found that Wruck, Big Lake Lumber, and DesMarais Construction contributed to the same project of improvement. Accordingly, under the relation-back doctrine and Minn.Stat. § 514.05, subd. 1, the mechanic's liens of Big Lake Lumber and DesMarais Construction have priority over the mortgage of the Bank.

Reversed.

LILLEHAUG, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.