NEW PRAGUE LUMBER & READI-MIX COMPANY v.
BENJAMIN BASTYR AND OTHERS.
FIRST NATIONAL BANK OF NEW PRAGUE, APPELLANT.

117 N. W. (2d) 7.

July 20, 1962—No. 38,525.

*C. L. Nelson,* for appellant.
*Eugene C. Wann,* for respondent.

NELSON, JUSTICE.
New Prague Lumber & Readi-Mix Company commenced this action

to foreclose a mechanics lien, naming as defendants Benjamin Bastyr, Hope Bastyr, and First National Bank of New Prague. A lien statement for $1,529.19 had been filed on December 15, 1959, based upon a claim that plaintiff had furnished labor and material used in repairing and renovating a building in Scott County. Defendants Benjamin Bastyr and his wife, Hope, the owners of the building, are in default. Defendant bank answered and set up as a defense that its purchase money mortgage was superior to plaintiff's mechanics lien.

Benjamin Bastyr acquired the building involved through the execution of an earnest money contract dated January 5, 1959. Although he did not pay the purchase price of $8,000 provided for in the contract until May 1, 1959, he nevertheless was permitted to enter upon the premises from the date of the contract for the purpose of renovating and making repairs. He tendered a $500 check as earnest money on the date of the execution of the contract, but this was returned without being cashed May 1, 1959, when the entire purchase price was paid by arrangements through defendant bank.

The building was an older building and had been unoccupied for some time. Bastyr immediately began to repair it for use as a home and as a place for his commercial photography business. He did practically all the work himself with the exception of electricity and plumbing and putting in windows in the store front. These improvements were made before May 1, 1959. The materials were obtained from plaintiff and the repairs included fixing the roof, a new roof where needed, new storm windows, a new photographic dark room with paneled walls, and other minor repairs such as painting and putting on new siding. The president of the bank admitted that he knew the building was being renovated since he walked by it frequently.

A bill of particulars was attached to the complaint and appears in full in the record. It indicates the sales ticket number, the date of purchase, and the amount of each item purchased from plaintiff by the Bastyrs. This bill of particulars shows that 20 items were purchased between January 13, 1959, and April 28, 1959, which indicates that the material for repairs and renovating of the building was all purchased prior to May 1, 1959, when Bastyr acquired his

deed to the property. The next item shown is on August 20, 1959, for $4.20, and it is the only item between April 28, 1959, and October 3, 1959.

Benjamin Bastyr was called as a witness by plaintiff. Under cross-examination by counsel for defendant bank, he gave the following testimony:

"Q. * * * I notice one item, the only item from April to October in that year is a purchase of $4.20 in August. Do you have any recollection concerning that item?

"A. I don't recall what that was, no.

"Q. Do you have any recollection of Mr. Kratochvil [manager of plaintiff] ever asking you to make a purchase to keep your lien alive?

"A. Yes, I do.

"Q. Was that during that summer?

"A. That was during the summer. He called me by phone one morning and asked me to come down and make a purchase. I told him that I didn't have any money. He said, 'Just come down and make a purchase and pay whatever you can.' I went down and I think I paid $1.95 and bought some materials.

"Q. At that time had you completed the repairs to the old building?

"A. Yes, sir.

"Q. You had not yet undertaken the installation of an addition?

"A. No, sir.

"Q. Now, Mr. Bastyr, had you discussed with Mr. Kratochvil the fact that you were placing a loan on this property?

"A. Yes, I had.

"Q. Had you told him why?

"A. Yes, sir.

"Q. What did you tell him?

"A. I told him that we were going—in the process of negotiating the purchase of this building; that we wanted to improve it; that it was a pretty sure thing. I also told him that we would try and pay for the amount of the improvement out of the proceeds that we

got from our business. However, that if the business did not warrant it that Mr. Topka had assured me that as soon as my mortgage would be reduced that he would rewrite the mortgage and that we would take care of his debt."

Bastyr also gave the following testimony on cross-examination:

"Q. Now, Mr. Bastyr, going back to your transactions with Mr. Kratochvil. All of the improvements that you have described in your testimony so far relate to improvements that were made before you moved in the building, were they not?

"A. Yes, sir.

"Q. In other words, improvements made before May 1, 1959, is that correct?

"A. Yes, sir.

"Q. And only those bills incurred up to May 1, 1959, represent the materials that you have talked about, don't they?

"A. Yes, sir.

"Q. Now, I notice in the bill of particulars in this lawsuit, as we call it, being a list of material items, a large number of purchases in October 1959 and in November 1959. Would you tell me what type of improvements those purchases covered?

"A. Those purchases covered the improvement which I made on the addition of a new section on our building.

"Q. What do you mean the addition of a new section?

"A. We put—we put on a new room. The measurement was 12 x 18.

\* \* \* \* \*

"Q. To what part of the building was this addition added?

"A. It was added on the southeast corner of the building.

"Q. That would be on the residential quarters?

"A. Well, it was on the—it was just alongside the old store section. It would be in the residential. Of course it is all combined with the store and the residence."

The record indicates clearly that material was first furnished for the addition to the building on October 3, 1959, and that the last item was furnished on November 19, 1959. The time gap between

the two groups of purchases is 5 months and 5 days. Three months and 23 days had elapsed between the last item on the repairs of April 28, 1959, and the lone purchase for $4.20, made on August 20, 1959. There is no testimony as to the items composing this purchase. It has further been made inconsequential by Bastyr's statement that plaintiff had asked him to make that purchase to keep the lien alive but that he had no recollection of the items involved. Plaintiff's claim that this was one continuous project from January 13, 1959, to November 19, 1959, as shown in the bill of particulars does not find support in Bastyr's testimony. Bastyr definitely states that at the time he completed the repairs to the old building he had not yet contemplated or undertaken the erection of the addition. The record is clear that this was not undertaken until more than 5 months after the completion of the renovation.

Defendant bank maintains that it is the holder of a mortgage on the premises, which mortgage was recorded on May 2, 1959; that the proceeds of the mortgage were used by the mortgagors pursuant to specific agreement with the bank for the purchase of the premises; and that this mortgage was at all times a purchase money mortgage having priority over plaintiff's lien.

If there were ample proof that all the materials were furnished for the same general purpose and constituted a single series of transactions which was continuous until its termination, the claim of the bank that it holds a superior lien could not prevail since there would be evidence upon which a finding could be based that the bank had knowledge of the repairs made prior to April 28, 1959, and before the date of the filing of the mortgage.

However, where the evidence showed a lapse between April 28, 1959, and October 3, 1959, and that the addition constituted another separate purpose not under contemplation when the first was completed and the later transaction or building program was based upon an afterthought (clearly stated in Bastyr's testimony), then the furnishing of the materials would not be one continuous transaction. The materials furnished to Bastyr to make the residential addition may be properly considered as furnished under a new and independent

contract. Certainly no extension of time for filing the lien statement resulted from the $4.20 purchase on August 20, 1959.

Since it appears from the record that two separate contracts were contemplated, the lien must fail for lack of unity and failure to record and, if this is true, the bank has priority as between the parties and must prevail as a matter of law.

After the trial the trial court found plaintiff's mechanics lien superior to the bank's mortgage and decreed foreclosure. Defendant bank moved for amended findings or, in the alternative, for a new trial, which motion was denied. This appeal is from the denial of the motion.

The only questions with which this court is concerned are whether the record supports the findings of fact and whether the findings of fact support the conclusions of law.

Minn. St. 514.01 provides:

"Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, whether under contract with the owner of such real estate or at the instance of any agent * * * shall have a lien upon the improvement, and upon the land on which it is situated * * *."

Minn. St. 514.05 provides:

"All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. * * *"

Minn. St. 514.08 provides in part:

"The lien shall cease at the end of 90 days after doing the last of such work, or furnishing the last item of such skill, material, or machinery, unless within such period a statement of the claim therefor, be filed for record with the register of deeds * * *."

In McCausland v. West Duluth Land Co. 51 Minn. 246, 53 N. W. 464, this court held:

"When the owner of land conveys to one who has caused a building to be erected on it, and at the same time takes back a mortgage for the purchase money, and prior thereto mechanics' liens have accrued in constructing the building, whether the mortgage or liens shall take precedence will depend on whether the interest of the owner (the mortgagee) was or was not, at the date of the conveyance, subject to the liens."

In Gardner v. Leck, 52 Minn. 522, 54 N. W. 746, it was held that where work has been commenced in the construction of a building, and the course of such construction is continuous until its determination, a mortgage recorded during the interim must be subordinate to all lien claimants who shall have aided and filed their liens.

In Reed & Sherwood Mfg. Co. v. Jones, 202 Minn. 274, 278, 278 N. W. 30, 31, by way of dicta in a case under similar facts, we said:

"* * * The evidence is undisputed that the first knowledge respondent had of the improvement made by Jones was when it was served with summons in this action. Had the proof shown that it or its agents in charge of its real estate and mortgages knew that the improvement of the dwelling was in progress, plaintiff's lien would have been superior to respondent's mortgage. McCausland v. West Duluth Land Co. 51 Minn. 246, 53 N. W. 464; Fauser v. McElroy, 157 Minn. 116, 195 N. W. 786; Bruer Lbr. Co. v. Kenyon, 166 Minn. 357, 208 N. W. 10."

Finally, in Brettschneider v. Wellman, 230 Minn. 225, 41 N. W. (2d) 255, 256, Mr. Justice Knutson said:

"Liens under § 514.05 may attach even though deed to property is subsequently acquired where it appears that in anticipation of building a house a contractor is instructed to proceed with the work and does so by excavating the basement."

A well-reasoned opinion is Nelson v. Bailey, 54 Wash. (2d) 161, 167, 338 P. (2d) 757, 760, 73 A. L. R. (2d) 1400, where the court rejected cases which reach the conclusion that the mechanics lien is inferior to the purchase money mortgage through the doctrine of instantaneous seisin, under which the title becomes encumbered with

the mortgage the moment it passes from the seller to the purchaser. There the court stated:

"In this jurisdiction, the court has refused to apply the doctrine in cases where its application would defeat the claim of the mechanic who has undertaken to perform work and deliver materials before title has been acquired by the person ordering the same, where the mortgagee knew that work was in progress at the time the mortgage was taken."

This would seem to be in accord with Brettschneider v. Wellman, *supra,* and would seem to express the better rule if the purchase money mortgagee knew that work and materials had been furnished.

Oliver v. Davy, 34 Minn. 292, 25 N. W. 629, cited by defendant bank, is not in point.

The basic problem here is whether the lien claimed by plaintiff results from one continual transaction or whether the materials furnished by plaintiff went into two different projects. If the latter is true, then the lien is subordinate to defendant bank's mortgage.

In the early case of Frankoviz v. Smith, 34 Minn. 403, 406, 26 N. W. 225, 226, this court observed:

"A running account for materials furnished for the same general purpose is deemed an entire contract. Each item is not to be regarded as a separate cause of action, but the whole rather as a continuous dealing, the aggregate of the items being included in the same cause of action for which one lien is given. * * * The lapse of so long a time between the items of March 18th and June 4th, unexplained, would be evidence, more or less strong according to the circumstances, that the two items did not belong to the same account, that they were not furnished for the same job, and that the latter item was upon an after-thought. But it is a question of fact for a jury."

See, also, American Bridge Co. v. Honstain, 120 Minn. 329, 139 N. W. 619.

In Paine & Nixon v. Dahlvick, 136 Minn. 57, 59, 161 N. W. 257, we held that:

"If the contracts are separate and distinct and unrelated, not in

connection with a continuous work or job, a lien claim filed does not preserve a lien upon materials furnished prior to the 90 days."

In Villaume Box & Lbr. Co. v. Condon, 146 Minn. 156, 157, 178 N. W. 492, 493, a house was erected and completed in September. In October from the same supplier the owner put double windows on a sun porch which was not contemplated at the time of the construction of the house. This court said:

"When the owner determines to add something to the building after its construction has been completed and it has been delivered and accepted, materials furnished to the contractor to make the addition and not to accomplish the general purpose of the original contract are considered to be furnished under a new and independent contract."

This view was followed in A. Y. McDonald Mfg. Co. v. Newstone, 187 Minn. 237, 239, 244 N. W. 806, 807, where a plumber installed a sink in April, completing the work on the 16th and about the 20th or 21st the plumber installed a towel bar and tumbler holder alongside the sink. He filed his lien 94 days after completion of the installation of the sink. We there said:

"It seems evident that there were here two separate purchases or contracts, and that the purchase of or contract for towel bar and tumbler holder was distinct and separate from the contract for the sink. No extension of time for filing the lien statement for the sink resulted."

See, 12 Dunnell, Dig. (3 ed.) § 6087.

As was stated by Mr. Justice Matson in Kahle v. McClary, 255 Minn. 239, 241, 96 N. W. (2d) 243, 245:

"* * * The factor determining whether two operations are continuous, or separate and independent, is the general purpose of the contract. The distinction is illustrated by language in Hazard Powder Co. v. Loomis & Campbell, 13 Ohio Dec. Reprint 333, 337, quoted earlier by our court:

" '* * * Where work, distinct in its nature, is performed at different times, the law supposes it performed under distinct engagements,

as where the work at one time is for building, and at another for repairing. So, where two distinct contracts are in fact made, as * * * distinct contracts for different parts of the work, the work done under each contract must be considered as entire of itself. But when work, etc. is done or furnished, all going to the same general purpose, as the building of a house, or any of its parts, though such work, etc., be ordered and done, at different times, yet, if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract.' "

The testimony of plaintiff's own witness, Benjamin Bastyr, that the projects were substantially different, has not been met or overcome. This together with the considerable lapse of time—more than 5 months —supports the conclusion that the second project was an afterthought. The first materials were ordered for repairing and renovating the building to put it in condition for use as a commercial photography shop. This seemed to be his paramount consideration at the time. The addition was started later and subsequently completed some 11 months thereafter. Since it appears from the only testimony on the subject, by plaintiff's own witness, that there were two separate contracts, the purposes of which were unrelated, the lien must fail from lack of unity and failure to record. This being established by the record, without direct or satisfactory testimony to the contrary, the purchase money mortgage has priority.

Reversed and remanded with directions to enter judgment in accordance with this opinion.