**WITCHER CONSTRUCTION CO., Respondent,**

v.

**The ESTES II LIMITED PARTNERSHIP, Respondent,**

MeraBank Federal Savings & Loan Association, as successor to First Federal Savings & Loan Association Arizona, Appellant,

Wunder – Klein – Donohue Company, Acoustical Floors, Inc., Quality Drywall, Inc., Harris Mechanical Contracting Company, et al., St. Paul Linoleum & Carpet Co., Inc., Ankeny, Kell, Richter & Associates, Architectural Sales of Minnesota, Inc., Respondents.

No: C5–90–1369.

Court of Appeals of Minnesota.

Jan. 15, 1991.

Review Denied March 15, 1991.

Kay Nord Hunt, Ronald L. Haskvitz, James M. Lockhart, Lommen, Nelson, Cole & Stageberg, P.A., Kevin M. Busch, O'Connor & Hannan, Minneapolis, for appellant.

David L. Lillehaug, Leonard, Street and Deina, Minneapolis, for Witcher Const. Co.

Thomas L. Fabel, Lindquist & Vennum, Minneapolis, for Estes II Limited Partnership.

Wunder–Klein–Donohue Co., Minneapolis, pro se.

Acoustical Floors, Inc., Hamel, pro se.

Timothy J. Grande, Arthur, Chapman & McDonough, Minneapolis, for Quality Drywall, Inc.

Richard T. Kavaney, Stringer & Rohleder, Ltd., St. Paul, for Harris Mechanical Contracting Co., et al.

Phillip T. Colton, Maun & Simon, Minneapolis, for St. Paul Linoleum & Carpet Co., Inc.

Timothy P. Mahoney, Robins, Kaplan, Miller & Ciresi, Minneapolis, for Ankeny, Kell, Richter & Associates.

Jerre A. Miller, Vesely, Miller & Steiner, Hopkins, for Architectural Sales of Minnesota, Inc.

Considered and decided by HUSPENI, P.J., and CRIPPEN and KALITOWSKI, JJ.

**CRIPPEN, Judge.**

Renovation of the International Harvester Building in St. Paul was separated into two parts for contracting purposes. The first part was base building or shell renovation work and the second part was the improvement of tenant areas. The claims of respondent mechanics' lienholders arise under the contract for tenant improvement work.

The predecessor of appellant MeraBank Federal Savings and Loan filed a mortgage lien against the project property. Appellant claims the mortgage was filed after the execution of the first contract and before work began under the second contract. MeraBank appeals the trial court's decision that respondents' mechanics' liens have priority because they relate back to work done under the first contract. If the separately contracted parts of the project are viewed as different improvements, appellant argues, respondents' liens only attach to the second improvement and do not have priority over appellant's mortgage. We agree with the trial court that the renovation was a single improvement.

## FACTS

Developer Estes II planned to renovate the International Harvester Building in St. Paul. Renovation work was contracted under two separate documents. The first contract was for renovation of the building's shell and the second contract was for renovation of tenant space. Respondent Witcher Construction was the construction manager for the base building work and the general contractor for the tenant improvement work. The base building work began on approximately January 4, 1985. Although the parties dispute when the tenant improvement work began, that work was expected to start almost immediately after the base building work was completed.

First Federal Savings and Loan Association, predecessor to appellant MeraBank, recorded a mortgage on the project property on February 10, 1986. It is not disputed that First Federal knew that renovation work was being done during 1985.

On March 3, 1989, respondent Witcher Construction asserted a mechanics' lien against the project property. The mechan-

ics' lien statement said the money was owed to Witcher for Witcher's work on tenant improvements and to pay for goods and services provided by respondent subcontractors Quality Drywall, Harris Mechanical, St. Paul Linoleum and Carpet Co., Parsons Electric, and Architectural Sales of Minnesota. Each of these subcontractors also filed its own mechanics' lien. Witcher also claimed it was owed for goods and services supplied by its other subcontractors who did not file their own mechanics' liens.

Respondent Ankeny, Kell, Richter, and Associates, an architectural firm that worked on both parts of the project, also recorded a mechanics' lien for approximately $25,000. The Ankeny lien incorrectly claimed approximately $6000 for goods and services supplied to property associated with but not part of the International Harvester renovation. An Ankeny official testified that this overstatement was an innocent mistake.

The trial court ruled that respondents' mechanics' liens had priority over appellant's mortgage. The court found that the parties contemplated a single, continuous development and that "[a]t no time did the owners or others in control of the project contemplate two separate and distinct developments consisting of shell building work as one project and tenant improvements as a second and separate project."

The trial court also rejected two other mortgageholder contentions: (1) that respondent Witcher could not include in its lien claims for goods and services made by subcontractors who did not file their own mechanics' liens and (2) that respondent Ankeny's lien should be voided because it was knowingly overstated.

## ISSUES

1. Did the trial court err by ruling respondents' mechanics' liens had priority over appellant's mortgage?

2. Did the trial court err by failing to exclude subcontractor claims from respondent Witcher's mechanics' lien and by refusing to void respondent Ankeny's overstated mechanics' lien?

## ANALYSIS

■ 1. A mechanics' lien attaches when the first item of material or labor is furnished for the beginning of the improvement and it is preferred over a mortgage not then of record unless the lienholder has actual notice of the mortgage. Minn.Stat. § 514.05, subd. 1 (1988). As against a bona fide mortgagee, a lien attaches at the first visible improvement on a construction project. *M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.*, 279 Minn. 278, 284, 156 N.W.2d 748, 752 (1968). Here, the first visible improvement to the overall renovation project occurred when the base building work began. This work began before appellant's predecessor recorded its mortgage on the property. Thus, if the overall renovation project is viewed as a unitary project, respondents' mechanics' liens have priority over appellant's mortgage.

■ The question whether labor was performed as part of distinct improvements or was part of one continuous improvement is a question of fact, and the reviewing court need only determine if the evidence reasonably supports the lower court's finding that the improvement was continuous. *Kahle v. McClary*, 255 Minn. 239, 242, 96 N.W.2d 243, 246 (1959). But findings of fact that are influenced by an error of law may be set aside by the reviewing court. *Olson v. Olson*, 236 Minn. 363, 365, 53 N.W.2d 29, 31 (1952). Here, appellant challenges the trial court's refusal to recognize as a matter of law that separate contracts complete unto themselves divide a project into two separate improvements. If the trial court were incorrect in rejecting this proposition, it has made an error of law that this court may reverse.

We conclude that the trial court did not err. Contracting separately for different stages of a construction project does not, by itself, divide the project into separate improvements. Division occurs when the facts surrounding the work done under the separate contracts indicate that they were separate improvement projects.

■ Construction work is considered a single improvement if it is done for the same general purpose, or if the parts, when gathered together, form a single improvement. *Kahle*, 255 Minn. at 241, 96 N.W.2d at 245. A project consists of separate improvements if there is little or no interrelationship between the contracts under which the project was performed. *See New Prague Lumber & Readi-Mix Co. v. Bastyr*, 263 Minn. 249, 258, 117 N.W.2d 7, 13 (1962) (project was two separate improvements where construction of residential addition began five months after repair project); *Insul–Acoustics, Inc. v. Lee*, 136 Cal.App.3d 552, 554, 186 Cal.Rptr. 324, 326 (1982) (installment of fixtures in several individual shops in shopping mall were separate improvements where each shop was responsible for its own fixture installment and each shop entered into separate contracts with the mechanics' lienor).

■ Because a mechanics' lien must be filed within 120 days after completion of an improvement, the question of when a project should be considered one continuous improvement has most often arisen in cases addressing the timeliness of a filing. *See* Minn.Stat. § 514.08 (1988). In these cases, the supreme court has consistently held that separate construction phases of the same overall construction project constitute one continuous improvement. *See Rochester's Suburban Lumber Co. v. Slocumb*, 282 Minn. 124, 128–29, 163 N.W.2d 303, 307 (1968); *Barrett v. Hampe*, 237 Minn. 80, 82, 53 N.W.2d 803, 805 (1952) (when determining whether project was single improvement, the type of contract is not dispositive; the question asked is whether the materials furnished or work performed were all pursuant to one job as a continuous undertaking).

Here, the evidence indicates that the parties involved in the renovation contemplated that the project was to be one continuous improvement. No time lapse occurred between the completion of the base building work and the beginning of the tenant improvement work. The separate contracts included tasks relating to both phases. Moreover, the mortgage financing provided by appellant covered both phases of the renovation, indicating appellant knew that the renovation was a single improvement.

The trial court did not err by holding that the renovation project was one continuous improvement and that respondents' mechanics' liens had priority over appellant's mortgage.

■ 2. Appellant contends the trial court erred in allowing respondent Witcher to include subcontractor claims in its mechanics' lien claim. Appellant acknowledges that the work covered by the claims was completed, but argues that Witcher produced no evidence showing that it was obligated to pay the subcontractors for the work.

Given that the work was done and that the developer was obliged to pay Witcher for the work, there is no need to probe further into the relationship between Witcher and its subcontractors. The trial court did not err by including the subcontractor claims in Witcher's mechanics' lien claim.

■ Finally, appellant argues that respondent Ankeny's mechanics' lien should be voided because it was intentionally overstated. Under Minn.Stat. § 514.74 (1988), a lien is void if the claimant knowingly demands in the statement more than is justly due. "To deprive the [lien] claimant of [the] right to a lien under [the] statute, there must be a showing of fraud, bad faith, or an intentional demand for an amount in excess of that due." *Delyea v. Turner*, 264 Minn. 169, 175, 118 N.W.2d 436, 440 (1962). Whether a claimant has intentionally overstated a lien claim is a fact question for the trial court and the trial court's determination will not be overturned unless clearly erroneous. *Cox v. First National Bank of Aitkin*, 415 N.W.2d 385, 388 (Minn.App.1987), *pet. for rev. denied* (Minn. Jan. 20, 1988).

Appellant points out that approximately $5000 of the overstated amount was for services performed under a separate oral contract on a different project. This evidence does not compel a finding of bad

faith. Given the evidence that the services were rendered for projects being constructed simultaneously, we can find no clear error in the trial court's finding that the overstatement was a good faith mistake.

## DECISION

The trial court did not err by ruling that respondents' mechanics' liens had priority over appellant's mortgage, that subcontractor claims were properly included in respondent Witcher's lien, and that respondent Ankeny's lien was not voided due to overstatement.

Affirmed.