**SUPERIOR CONSTRUCTION SERVICES, INC.,**
**Appellant,**

v.

**Latoria BELTON, et al., Defendants,**

**Town & Country Credit Corporation, a foreign corporation, Respondent.**

**No. A07–0377.**

Court of Appeals of Minnesota.

April 29, 2008.

Patrick J. Kelly, Skelly & Capistrant, P.A., St. Paul, MN, for appellant.

Gary B. Bodelson, Minneapolis, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; LANSING, Judge; and PETERSON, Judge.

## OPINION

LANSING, Judge.

This litigation arises from a priority dispute between a mechanic's lien claimant and a mortgagee in a lien-enforcement action. The mortgage was recorded five months before the lien, but thirty-two months after the lien claimant first began work on the property. The lien claimant appeals the district court's conclusion, on cross-motions for summary judgment, that the claimant had abandoned its work on the project, and thus its lien did not relate back to the commencement of work that predated the mortgage filing. Because the evidence, as a matter of law, establishes that the project was abandoned, we affirm.

## FACTS

Superior Construction Services, Inc. contracted in May 2002 to provide repair and restoration services for a fire-damaged Brooklyn Park property owned by Latoria Belton and LaTonya T. Harris. The estimated cost for the project was $40,000. In a work-authorization document, Belton agreed to remit the insurance proceeds to Superior within thirty days after receiving them. Superior completed the bulk of the contracted work over the next six months, and Belton was able to move back into the house in January 2003.

The litigants dispute what happened next. Belton claims that she tried to contact Superior several times during 2003, but was "unsuccessful" and consequently assumed that they were abandoning the project. Superior general manager Grant Heino, in an affidavit excluded as untimely for purposes of the district court's summary-judgment decision, stated that the delinquency of a former employee delayed completion of the project but asserted that the project file was "open" through 2003 and 2004. Heino claims that he spoke with Belton in November 2004, and scheduled an appointment on November 22 to go over the status of the project, but Belton failed to show up for the appointment.

Belton and Harris executed a mortgage with respondent Town & Country Credit Corporation on December 16, 2004. Town & Country was not aware of any ongoing

work by Superior or of any debt owed to Superior for work on the property. When Town & Country conducted a title search, Superior had not yet filed a lien against the property. Town & Country recorded its mortgage in January 2005.

It is undisputed that Superior did not invoice Belton for the project during 2003. Belton received insurance proceeds directly from her insurer but did not honor the agreement to remit the proceeds to Superior. It is also undisputed that Superior contacted Belton in February 2005 and scheduled a meeting to determine what work was necessary to complete the project. On March 10, 2005, Belton authorized Superior to complete work on cabinets, counter tops, and heat registers. According to Superior, this work was "within the original scope of work on the project." Superior devoted an additional 8.25 hours of billable labor and $360.41 in materials to complete the project.

Superior recorded a mechanic's lien on the title to the property on June 22, 2005. On June 24, 2005, Belton signed a statement of completion that was prepared by Superior. In that statement Belton certified that Superior had completed the contracted restoration work, "which work was originally commenced in May of 2002."

Superior brought this action to enforce the lien and moved for default judgment against Belton and Harris. Superior also moved for partial summary judgment against Town & Country, requesting a judicial determination that its mechanic's lien was superior to Town & Country's mortgage and that it had not waived that superiority. Town & Country moved for summary judgment on its counterclaim, requesting a judicial determination on the priority of its mortgage.

The district court granted Superior's motion for default judgment against Belton and Harris but denied its motion for partial summary judgment against Town & Country. The court granted Town & Country's motion for summary judgment on its counterclaim, based on its determination that Superior had abandoned the construction it began in May 2002, and thus that its lien, filed on June 22, 2005, did not relate back to the beginning of that project. This appeal followed.

## ISSUE

Did the district court err by granting summary judgment determining, as a matter of law, that Town & Country's mortgage had priority over Superior's mechanic's lien?

## ANALYSIS

"On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law." *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 788 (Minn.2005). In assessing the evidence, we take the view most favorable to the party against whom judgment was granted. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 n. 1 (Minn.2003). But if the nonmoving party fails to raise a genuine issue of fact on any element essential to establishing its case, summary judgment is appropriate. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). No genuine issue of material fact exists if the record as a whole "could not lead a rational trier of fact to find for the non-moving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997). The district court is permitted to act on its determination that "a particular piece of evidence may have no probative value." *Id.* at 70. When the material facts are not in dispute, we review the district court's application of law de novo. *In re Collier*, 726 N.W.2d 799, 803 (Minn.2007).

■ Principles derived from two statutory provisions guide the resolution of this priority dispute. First, a mechanic's lien generally attaches to the land "from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement." Minn.Stat. § 514.05, subd. 1 (2006). Once attached, a mechanic's lien "shall be preferred to any mortgage ... not then of record," unless the lien-claimant has actual notice of the mortgage. *Id.* As against a bona fide mortgagee without actual or record notice of a mechanic's lien, however, "no lien shall attach prior to the actual and visible beginning of the improvement on the ground." *Id.* The second principle is that a lien that is not recorded ceases 120 days after "doing the last of the work, or furnishing the last item of skill, material, or machinery." Minn.Stat. § 514.08 (2006). Applying these principles, a mechanic's lien filed within 120 days of completion of a project preserves the priority of that lien—or "relates back"—to the date that the project began. But a lien that is not recorded within 120 days of completion is lost.

These statutory principles "balance[ ] the policy of protecting mortgagees who inspect the property and discover no actual and visible improvements against the policy of safeguarding the rights of persons who furnish labor and material to the improvement." *Suburban Exteriors, Inc. v. Emerald Homes, Inc.,* 508 N.W.2d 811, 813 (Minn.App.1993). We have recognized that "[t]his dual purpose is best served when the rights of both mortgagees and lien claimants are fixed with definiteness and certainty." *Carlson–Grefe Constr., Inc. v. Rosemount Condo. Group P'ship,* 474 N.W.2d 405, 408–09 (Minn.App.1991), *review denied* (Minn. Oct. 31, 1991).

■ Consistent with this dual purpose, the priority of a mechanic's lien does not relate back to the start of a construction project if that project has been abandoned, even if the same or similar work is subsequently recommenced. *Langford Tool & Drill Co. v. Phenix Biocomposites, LLC,* 668 N.W.2d 438, 443 (Minn.App.2003). Town & Country argues, and the district court concluded, that Superior abandoned and then recommenced the project on Belton and Harris's property, and that the lien recorded on June 22, 2005, does not relate back to the May 2002 start of the project.

In *Langford,* we recognized two approaches to defining abandonment. The first approach, designated as the "Kansas rule," provides that abandonment is "to be determined by the actual cessation of work, and not by the secret purposes of the owners." *Langford,* 668 N.W.2d at 443. The second approach, designated as the "Oregon rule," provides that a "finding of abandonment requires the 'intent' to abandon the project as well as a cessation of labor." *Id.* at 444. *Langford* recognizes only a minimal distinction between these two approaches, reasoning that "even under the 'Oregon rule,' the mental intent to abandon *can be inferred from the physical actions.*" *Id.* *Langford* emphasized that "[t]he physical, visible condition, to be determined from an inspection of the premises, is an essential element as part of determining whether a project has been abandoned." *Id.*

Applying this analysis, *Langford* affirmed the district court's determination that construction projects that were halted because of the property owner's financial difficulties were abandoned and, therefore, later-filed liens could not relate back to the start date of those projects. *Id.* at 443–45. The evidence supporting the district court's determination of abandonment in *Langford* included an eleven- or twelve-month cessation of work and the posting of

"no trespassing" signs on the property. *Id.* at 443.

Relying on *Langford*, the district court concluded as a matter of law that Superior had abandoned the restoration project. The court relied principally on the undisputed fact that no labor or materials had been provided for the project for more than two years, which is more than double the length of the work cessation in *Langford*. The district court also based its determination on the undisputed fact that Town & Country had no actual or constructive knowledge of Superior's claim. In other words, no lien had been recorded, and nothing in the physical appearance of the property suggested an ongoing construction project.

Superior advances two arguments for reversal of the district court's grant of summary judgment. First, Superior argues that the district court misapplied the summary-judgment standard by failing to credit factual inferences in its favor. Second, Superior argues that the district court erred by excluding from consideration the affidavits of two Superior employees. The affidavits were first submitted on the day of the summary-judgment hearing.

■ In support of its first argument, Superior maintains that the following facts support a reasonable inference that the project was not abandoned: (1) testimony by Superior's president that the project was ongoing and never considered abandoned; (2) Belton's failure to remit payment to Superior or to hire an alternate contractor; and (3) Belton's signature on the document authorizing completion of the work and statement of completion acknowledging a continuation of the original project.

Superior's argument that summary judgment is precluded by testimony that it did not intend to abandon the project raises the issue of the significance of subjective intent. In *Langford*, we addressed a generalized assertion that subjective intent was a required element of abandonment. *Id.* at 443–44. We assumed, without deciding, that intent was an element, and concluded that the intent to abandon could be inferred from the circumstances of that case. *Id.* at 444. In other words, we held that direct evidence was not required to prove intent. In this case, Superior has presented specific and direct testimony disavowing any intent to abandon the restoration project. Thus, we must determine whether, taking into account this direct testimony, the district court could nevertheless enter judgment against Superior as a matter of law.

■ We did not explicitly address in *Langford* whether intent should be judged by an objective or subjective standard. Our analysis in that case suggests that intent is to be judged by the objective manifestations of the parties. *See id.* at 444 (indicating that intent can be inferred from actions of parties). An objective standard is also consistent with our contract jurisprudence, from which the principle of abandonment derives. *See Riley Bros. Constr., Inc. v. Shuck*, 704 N.W.2d 197, 202 (Minn.App.2005) ("Minnesota follows the objective theory of contract formation, under which the parties' outward manifestations are determinative, rather than either party's subjective intent."); *see also Republic Nat'l Life Ins. Co. v. Marquette Bank & Trust Co.*, 295 N.W.2d 89, 93 (Minn.1980) (defining abandonment of contract and holding that it can be proven circumstantially). We further note that assessing intent under a subjective standard would tend to thwart the dual purpose of the mechanics-lien statute. *See Suburban Exteriors*, 508 N.W.2d at 813 (discussing purposes of statute). Mortgagees would be unduly prejudiced by a rule allowing priority based on subjective

intent to continue a project, if outward appearances suggested that the project had been completed or abandoned. Beyond prejudice, a subjective-intent rule would introduce substantial uncertainty to the system. *See Carlson–Grefe Constr.,* 474 N.W.2d at 408–09 (discussing need for certainty in order to protect rights of mortgagees and lien claimants). For these reasons, we conclude that the intent to abandon must be determined based on the objective manifestations of the parties, rather than their subjective intent.

Superior's remaining assertions of facts that it contends give rise to reasonable inferences requiring reversal are not persuasive. The district court is required to draw only *reasonable* inferences in Superior's favor. *See City of Savage v. Varey,* 358 N.W.2d 102, 105 (Minn.App.1984) ("The court is not required to save the non-moving party by drawing unreasonable inferences."), *review denied* (Minn. Feb. 27, 1985). The inferences urged by Superior—particularly with respect to alleged admissions by Belton contained in documents prepared by Superior after work recommenced and very likely in anticipation of litigation—are not reasonable. Belton's failure to remit payment to Superior or to hire an alternate contractor similarly does not give rise to sufficient probative inferences to withstand summary judgment.

 On Superior's second argument, objecting to the exclusion of evidence, we conclude that the district court acted within its discretion by not admitting the belatedly offered testimony. *See Am. Warehousing & Distrib., Inc. v. Michael Ede Mgmt., Inc.,* 414 N.W.2d 554, 557 (Minn. App.1987) (recognizing district court's discretion to exclude untimely affidavit). But, even if we were to consider the additional evidence in these affidavits—which is primarily related to Superior's unexpressed subjective intent to continue the project—summary judgment was still appropriate.

On this record the district court did not err by determining that the facts compelled the conclusion that the project had been abandoned as a matter of law. The district court properly concluded that Superior's and Belton's objective manifestations of intent—the cessation of work for more than two years and a mutual failure to communicate for at least fifteen months—was sufficient to overcome any after-the-fact assertions by Superior of its subjective intent to continue the project.

## DECISION

Because there are no genuine issues of material fact, and judgment is appropriate as a matter of law, the district court did not err in entering summary judgment in Town & Country's favor.

**Affirmed.**