BIG LAKE LUMBER,
INC., Respondent,

v.

SECURITY PROPERTY
INVESTMENTS, INC.,
et al., Defendants,

21st Century Bank, Appellant,

Wright Lumber & Millwork,
Inc., Respondent,

Pearson Plumbing Corp., Respondent,

J. DesMarais Construction,
Inc., Respondent.

No. A11–2220.

Court of Appeals of Minnesota.

Aug. 27, 2012.

Karl E. Robinson, Hellmuth & Johnson, PLLC, Edina, MN, for respondent Big Lake Lumber.

Steven R. Little, Stephen F. Buterin, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for appellant.

Steven B. Szarke, Szarke & Szarke Law Office, Buffalo, MN, for respondent Wright Lumber & Millwork.

Bridget A. Brine, Duluth, MN, for respondent Pearson Plumbing Corp.

Gerald Von Korff, Rinke Noonan, St. Cloud, MN, for respondent J. DesMarais Construction.

Considered and decided by CHUTICH, Presiding Judge; KALITOWSKI, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant-bank challenges the district court's determination that respondents' mechanic's liens have priority over appellant's mortgage under the relation-back doctrine and Minn.Stat. § 514.05. Because the pre-mortgage excavation of the property was not part of one continuous project of improvement, the district court erred by concluding that respondents' post-mortgage contributions of material and labor related back to the first visible sign of pre-mortgage excavation. We therefore conclude that respondents' mechanic's liens do not have priority over appellant's mortgage, and we reverse.

## FACTS

In 2005, M & L Cabinets and Countertops, Inc. (M & L), started by Mark Hilde, purchased a lot in Zimmerman, Minnesota (the property). Hilde intended to build a house, live in it for several years, and then sell it. At Hilde's request, Wruck Excavating Inc. designed a septic system for the house in July 2005. In order to obtain a construction loan, Hilde had respondent Big Lake Lumber Inc. draft preliminary building plans and had Wruck clear a path on the property on August 13–14, 2005. Hilde paid Wruck for the work, and Wruck performed no further work on the property until after October 27, 2006.

After Wruck performed its work in the summer of 2005, Hilde's intentions regarding the property changed. Rather than construct a home to be his personal residence, Hilde decided to construct and sell a "spec home." In early 2006, defendant Security Property Investments Inc. offered to purchase the property with the proposed spec home on it. Later, Security Property decided to purchase the property *without* a spec home, and, on July 6, Hilde signed a purchase agreement to sell the property without a spec home. For reasons not clear from the record, the named buyer in the purchased agreement was Jason Shackelton, not Security Property. The purchase agreement included a sale price of $142,000 and a closing date of July 20, 2006. Hilde testified that "sometime prior to the closing," Security Property asked him to construct a home on the property. He further testified that

> in order to even consider a build on there, again, [Wruck] had to be in there to clear some of the lot out so that people could get up in there. The lot had to be staked. The house that they were going to build or I was going to build out there had to be staked. Engineering had to be done.... [T]his was

work that was done again because too much time had passed from the original. Hilde testified that this work was "in addition to the 2005 work ... done by Wruck Excavating." On July 28, 2006, Bogart, Pederson & Associates staked the property. Hilde acknowledged that the staking of the property in July 2006 "wasn't performed as part of the project that [Hilde] originally intended to do in 2005" but rather was performed for "the ultimate project that was built."

In late August 2006, defendant Christopher Schonning, an individual associated with Security Property, entered into a contract with MLH Construction, another company started by Hilde, for the construction of a house on the property. On about October 4, 2006, the parties modified the purchase agreement, moving the closing date to later in October; substituting Schonning as the buyer; and increasing the purchase price from $142,000 to $389,596, which included the cost of the land and a house. At closing on October 26, Hilde executed an affidavit, stating that "[t]here has been no labor or materials furnished to the [property] for which payment has not been made," and Schonning granted appellant 21st Century Bank a $290,000 mortgage against the property to secure his construction loan. The bank recorded its mortgage on October 27, 2006.

Subsequent to the closing, Wruck installed on the property the septic system that it designed in 2005. Ultimately, MLH was asked to leave the project and respondent J. DesMarais Construction was asked to replace MLH. DesMarais took over as general contractor in January 2007.

In March 2007, Big Lake Lumber recorded its mechanic's lien for $43,475.01 for materials and labor first contributed in November 2006. In July 2007, DesMarais recorded its mechanic's lien for $103,985.85 for labor it began contributing in January

2007. The parties stipulated to the validity of both liens, disputing only priority as to the bank's October 2006 mortgage.

Schonning defaulted on the mortgage, the bank foreclosed the mortgage in May 2008, and Schonning did not redeem from the foreclosure. Big Lake Lumber thereafter commenced a mechanic's-lien foreclosure action and asserted various other claims against Security Property, Schonning, DesMarais, the bank, and others. Before trial Big Lake Lumber dismissed all of its claims against Security Property and Schonning, except its mechanic's lien; the bank moved for partial summary judgment that its mortgage had priority over the mechanic's liens; and DesMarais, joined by Big Lake Lumber, moved for partial summary judgment that their mechanic's liens had priority over the mortgage. The district court granted partial summary judgment to DesMarais and Big Lake Lumber. The bank appealed, and this court reversed and remanded for further proceedings. *Big Lake Lumber, Inc. v. Sec. Prop. Invs.*, No. A09–2129, 2010 WL 3632451 (Minn.App. Sept. 21, 2010) (*Big Lake Lumber I* ).

On remand, after a court trial, the district court concluded that DesMarais's and Big Lake Lumber's mechanic's liens had priority over the bank's mortgage, reasoning that the attachment of the liens related back to Wruck's August 2005 excavation work because that work and the materials and labor of the mechanic's-lien claimants contributed to "the single improvement of constructing a home on the Property." The district court further concluded that the 14–month delay between Wruck's work in August 2005 and the bank's mortgage recorded on October 27, 2006, "alone [did] not constitute abandonment."

This appeal by the bank follows.

## ISSUES

I. What is this court's scope of review?

II. Did the district court erroneously conclude that the mechanic's liens related back to the excavation work completed in August 2005?

## ANALYSIS

### I. Scope of Review

■ Based on this court's opinion in *Big Lake Lumber I*, DesMarais argues that the law-of-the-case doctrine requires this court to reject the bank's arguments against the relation back of DesMarais's and Big Lake Lumber's mechanic's liens to Wruck's excavation work in August 2005. We disagree. "The law-of-the-case doctrine is a rule of practice that once an issue is considered and adjudicated, that issue should not be reexamined in that court or any lower court throughout the case." *State v. Dahlin*, 753 N.W.2d 300, 305 n. 7 (Minn.2008) (quotation omitted). But in *Big Lake Lumber I*, this court did not reject the bank's arguments but rather reversed and remanded the district court's grant of summary judgment because genuine issues of material fact existed with regard to whether the lien claimants' work was "part of the same continuous improvement" as work performed prior to recordation of the bank's mortgage. *Big Lake Lumber I*, 2010 WL 3632451, at *1, *5. We therefore conclude that DesMarais's argument that we must reject the bank's priority arguments is without merit.

■ The bank requests, without moving to strike, that this court "disregard" portions of DesMarais's statement of the facts that "fail[ ] to appropriately cite to the record and ... contain[ ] impermissible argument" in violation of Minn. R. Civ.App. P. 128.02, subd. 1(c). Rule 128.02, subd. 1(c), requires an appellate brief's statement of the facts to be a state-

ment of "the facts" and that "[e]ach statement of a material fact be accompanied by a reference to the record." Minn. R. Civ. App. P. 128.02, subd. 1(c). "A flagrant violation of the rule[ ] [requiring] citations to the record may lead to non-consideration of an issue or dismissal of an appeal." *Brett v. Watts*, 601 N.W.2d 199, 202 (Minn. App.1999) (quotation omitted), *review denied* (Minn. Nov. 17, 1999); *see also Cole v. Star Tribune*, 581 N.W.2d 364, 372 (Minn.App.1998) (striking portions of appellants' briefs that "demonstrate[d] either ignorance of, or willful disregard for, the appellate rules" when appellants' facts sections contained no or few citations to the record and erroneously stated a fact that appellants later conceded to be incorrect).

In this case, DesMarais has included in its facts section of its brief argument and citations to caselaw regarding the bank's duty to inspect the property. And, although the facts section contains a number of citations to the record, numerous factual statements on pages 7 through 13 lack any citation to the record. DesMarais's uncited factual assertions are especially troubling because DesMarais makes a number of them in its favor that we cannot verify in the record. We therefore conclude that DesMarais's facts section fails to comply with rule 128, and we consequently disregard DesMarais's argument regarding the bank's duty to inspect. But we need not disregard DesMarais's uncited factual assertions because, without citation or obvious means of verification, DesMarais's uncited factual assertions are, at best, unpersuasive and, at worst, damaging to the persuasive value of its brief. *See Gagliardi v. Ortho–Midwest, Inc.*, 733 N.W.2d 171, 179 (Minn.App.2007) ("As learned commentators have accurately advised, 'a strained and inaccurate statement of the facts may irreparably impair a brief's credibility in the eyes of the appel-

late court.' " (quoting 3 Eric J. Magnuson & David F. Herr, *Minnesota Practice* § 128.6 (2006))).

## II. Mechanic's Lien and Mortgage Priority

We apply the following standard of review: "[W]hether labor was performed as part of distinct improvements or was part of one continuous improvement is a question of fact" that need only be "reasonably support[ed]" by the evidence, but this court may set aside factual findings if they are "influenced by an error of law." *Witcher Constr. Co. v. Estes II Ltd. P'ship*, 465 N.W.2d 404, 406 (Minn.App.1991), *review denied* (Minn. Mar. 15, 1991); *see Kahle v. McClary*, 255 Minn. 239, 242, 96 N.W.2d 243, 246 (1959) ("[T]he question of whether the labor was performed under independent or continuing contracts is one of fact."); *Olson v. Olson*, 236 Minn. 363, 365, 53 N.W.2d 29, 31 (1952) ("[W]here findings of fact are controlled or influenced by error of law they are not final on appeal and may be set aside."). But we note that where "the parties do not dispute the facts, but only the application of Minn.Stat. § 514.05 ..., the question remaining is one of law and we need not give deference to the trial court." *Suburban Exteriors, Inc. v. Emerald Homes, Inc.*, 508 N.W.2d 811, 812 (Minn.App.1993).

A mechanic's lien claimant that contributes to the improvement of real property by performing labor or furnishing material obtains a lien on the improvement and on the land where the improvement is located, which attaches and becomes effective "from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement." Minn.Stat. §§ 514.01, .05, subd. 1 (2010). But "no lien shall attach" against "a bona fide ... mortgagee ... without actual or record notice"

prior to "the actual and visible beginning of the improvement on the ground." Minn.Stat. § 514.05, subd. 1; *see Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 172 n. 11 (Minn.2010) ("A bona fide mortgagee under section 514.05 simply means a mortgagee that has acquired its interest in the property in good faith and without fraud."). The dual purpose of section 514.05 is to protect "laborers and material[persons]," *Rochester's Suburban Lumber Co. v. Slocumb,* 282 Minn. 124, 134, 163 N.W.2d 303, 309 (1968), and "prior mortgagee[s]," *Riverview Muir,* 790 N.W.2d at 174 (quotation omitted).

 To obtain priority over a bank's mortgage, a mechanic's lien claimant can only relate a lien back to the actual and visible beginning of a project of improvement on the ground if the lien claimant satisfies its burden to show that the work underlying the lien "bears directly" on the project of improvement and not merely on "the overall project involved." *Nat'l Lumber Co. v. Farmer & Son, Inc.,* 251 Minn. 100, 104, 87 N.W.2d 32, 36 (1957); *see also Carr–Cullen Co. v. Deming,* 176 Minn. 1, 3, 222 N.W. 507, 507 (1928) (noting that "the burden of showing that [an] agreement was one which would make the mechanics' liens prior to the mortgage rested upon said lienholders"). A mechanic's lien therefore does not bear directly on the project of improvement unless the project to which the lien's underlying work contributed is "one continuous work constituting one undertaking" with the project of improvement. *Barrett v. Hampe,* 237 Minn. 80, 80, 53 N.W.2d 803, 804 (1952); *see Kahle,* 255 Minn. at 240–41, 96 N.W.2d at 245 ("If the subsequent installation of the hot air register is an operation continuous with that of the furnaces, the lien is good. If the two operations are separate or independent, the lien has expired."

(footnote omitted)); *see also New Prague Lumber & Readi–Mix Co. v. Bastyr,* 263 Minn. 249, 256–57, 117 N.W.2d 7, 12 (1962) ("If the contracts are separate and distinct and unrelated, not in connection with a continuous work or job, a lien claim filed does not preserve a lien upon materials furnished prior to the 90 days." (quotation omitted)).

 Generally, to determine whether the mechanic's lien for a specific item of material or labor has priority over a mortgage, we first "identify the improvement to which the labor or material contributed" and second "determine what item of labor or material constituted the actual and visible beginning of that improvement." *Thompson Plumbing Co. v. McGlynn Cos.,* 486 N.W.2d 781, 786 (Minn.App.1992). But here the parties do not dispute that the project of improvement to which DesMarais and Big Lake Lumber contributed the lienable work underlying their liens was the house constructed and sold to Schonning or that DesMarais and Big Lake Lumber did not contribute their lienable work to that project of improvement until after the bank's mortgage recordation in October 2006. Rather, the parties dispute and this case turns on whether that project of improvement was the same project of improvement to which Wruck contributed pre-mortgage excavation work in August 2005, thereby permitting DesMarais and Big Lake Lumber to relate their liens back to the actual and visible beginning of that improvement on the ground. We therefore engage only in the first step of the analysis—identifying the improvement—because that step is dispositive. Because we conclude, as a matter of law, that the pre-mortgage excavation work in August 2005 and DesMarais's and Big Lake Lumber's post-mortgage contributions were not part of one continuous project of improvement to the property,

we reverse, and we need not determine whether Wruck's August 2005 excavation work or any other work constituted the actual and visible beginning of the improvement on the ground.

We begin our analysis by acknowledging that this court has developed two different but overlapping methods of analysis to determine whether a project of improvement is part of one continuous project to which a lien claimant's contribution relates or is a separate project. One method of analysis involves a determination of whether two projects of improvement to property are separate and therefore not continuous, based on four factors first applied in *Witcher Constr.*, 465 N.W.2d at 407, and re-stated in *Poured Concrete* as "the parties' intent, what the contracts covered, the time lapse between projects, and financing," *Poured Concrete Found., Inc. v. Andron, Inc.*, 529 N.W.2d 506, 510 (Minn. App.1995), *review denied* (Minn. May 31, 1995). The second method involves a determination of whether a project of improvement has been abandoned, and consequently is not continuous with a later project, based on the parties' objective manifestations of their intent and the actual and visible condition of the property in which the improvement is located as revealed by an inspection of the premises. *Superior Constr. Servs. v. Belton*, 749 N.W.2d 388, 391, 393 (Minn.App.2008); *see Langford Tool & Drill Co. v. Phenix Biocomposites, LLC*, 668 N.W.2d 438, 443–44 (Minn.App.2003) (noting significance of the actual and visible condition of the property, but not deciding whether intent to abandon needs to be objectively manifested).

In reliance on supreme court caselaw, we now integrate these analyses into a single framework for application in all disputes over the priority of mechanic's liens and mortgages under section 514.05.

■ Whether a project of improvement is continuous still turns on the four factors of the parties' intent, the contracts' scopes, financing, and time lapse. *See Duininck Bros. & Gilchrist v. Brandondale Chaska Corp.*, 311 Minn. 291, 294, 248 N.W.2d 743, 745 (1976) ("The factor determining whether two operations are continuous, or separate and independent, is the general purpose of the contract." (quotation omitted)); *New Prague*, 263 Minn. at 257–58, 117 N.W.2d at 12–13 (concluding that "the considerable lapse of time—more than 5 months—supports the conclusion that the second project was an afterthought"); *Witcher Constr.*, 465 N.W.2d at 407 (supporting the conclusion that two projects were part of one continuous improvement because "the mortgage financing provided by appellant covered both phases of the renovation, indicating appellant knew that the renovation was a single improvement"); *see also Barrett*, 237 Minn. at 82, 53 N.W.2d at 805 ("The question is not what kind of contract was entered into, but whether the materials furnished or the work performed was all pursuant to one job as a continuous undertaking.").

■ A time lapse of any length is evidence that the projects were not part of one continuous project of improvement, and the strength of that evidence depends on the length of the time lapse and surrounding facts. *See New Prague*, 263 Minn. at 257–58, 117 N.W.2d at 12–13 (noting that "[w]here work, distinct in its nature, is performed at different times, the law supposes it performed under distinct engagements" and concluding that "the considerable lapse of time—more than 5 months—supports the conclusion that the second project was an afterthought"); *Frankoviz v. Ireland*, 34 Minn. 403, 406, 26 N.W. 225, 227 (1886) ("The lapse of so long a time between the items of March 18th and June 4th, unexplained, would be evi-

dence, more or less strong according to the circumstances, that the two items did not belong to the same account, that they were not furnished for the same job, and that the latter item was upon an afterthought."); *see also Brettschneider v. Wellman*, 230 Minn. 225, 226–27, 232–33, 41 N.W.2d 255, 256, 259–60 (1950) (concluding that a project was "continuous and inseparable," "even though there was a lapse of time [of approximately two months] between the digging [of a basement] and the actual construction," because "[t]he contract ... when executed, included the necessary excavation" and "[t]he mere fact that the formal contract was executed after the basement was dug would not prevent the excavation from being a part of the work of constructing the house when it was made in contemplation of and as a part of the entire project").

■ Time lapse alone between projects does not prevent projects from constituting one continuous project of improvement, but abandonment alone of a project does prevent that project and subsequent projects from constituting one continuous project of improvement. *See Brettschneider*, 230 Minn. at 225, 233, 41 N.W.2d at 256, 260 (noting that a "mere lapse of time" of approximately two months between excavation and construction of a house "did not prevent the work from being continuous" because there was no evidence of "abandonment"); *see also City of Ortonville v. Geer*, 93 Minn. 501, 501, 101 N.W. 963, 963 (1904) (noting that construction of a building would not be "continuous" if construction was "abandon[ed]"); *Minneapolis Builders' Supply Co. v. Calhoun Beach Club Holding Co.*, 186 Minn. 635, 636, 244 N.W. 53, 54 (1932) (noting that no party disputed that construction work of a building was continuous and not abandoned, even though the construction

work included work "which followed the stopping of operations").

■ This court further developed the supreme court's abandonment jurisprudence by concluding that a project-abandonment finding requires evidence of an objectively manifested intent to abandon and evidence of the physical, visible condition of the property as determined by inspection. *See Superior Constr.*, 749 N.W.2d at 393 ("[T]he intent to abandon must be determined based on the objective manifestations of the parties, rather than their subjective intent."); *Langford Tool*, 668 N.W.2d at 444 ("The physical, visible condition, to be determined from an inspection of the premises, is an essential element as part of determining whether a project has been abandoned...."). "Where there is an abandonment of a project and a subsequent recommencement of work, mechanic's liens arising from the new work do not relate back to the original start of construction," *Langford Tool*, 668 N.W.2d at 440, "even if the same or similar work is subsequently recommenced," *Superior Constr.*, 749 N.W.2d at 391.

■ In applying our newly integrated analysis, we do not defer to the district court's finding that "[g]athering together Wruck's 2005 work with the work of ... Big Lake Lumber, ... DesMarais ..., and the other subcontractors, it is clear the work forms the single improvement of constructing a home on the Property," because we conclude that the district court's finding is influenced by an error of law. The district court determined that DesMarais's and Big Lake Lumber's mechanic's liens relate back to Wruck's August 2005 excavation work because "the 'one single improvement' was, and always appeared to be, construction of a home on the Property." But section 514.05 requires more. Section 514.05's provision that, as against bona fide mort-

gagees, "no lien shall attach prior to the actual and visible beginning of the improvement" indicates that the improvement must be "the specific improvement to which subsequent suppliers or laborers contributed" and not merely "any improvement," *Thompson Plumbing,* 486 N.W.2d at 787 (quotation omitted), or even "the overall project involved," *Nat'l Lumber,* 251 Minn. at 104, 87 N.W.2d at 36.

Here, the parties' intent, governing contracts, and financing all support the conclusion that Wruck, DesMarais, and Big Lake Lumber did not contribute material or labor to one continuous project of improvement. Hilde contracted Wruck to perform excavation work in August 2005 for the purpose of constructing a personal residence on the property for Hilde and his wife. DesMarais and Big Lake Lumber did not contribute material or labor to the house constructed on the property until after Schonning contracted MLH Construction to construct a house on the property in late August 2006 and the bank recorded its mortgage on October 27, 2006. Wruck performed the August 2005 excavation work when Hilde was seeking financing through a construction loan, but DesMarais and Big Lake Lumber did not perform their work until after Schonning obtained separate financing through the bank's mortgage. Moreover, after the bank recorded its mortgage, Wruck performed additional excavation work "in addition to [Wruck's August] 2005 work" because "too much time had passed from the original."

The relevant time lapses further support concluding that Wruck, DesMarais, and Big Lake Lumber did not contribute material or labor to one continuous project of improvement. A 14–month time lapse occurred between Wruck's excavation work in August 2005 and the bank's mortgage recordation in October 2006.

During the large time lapse, three significant events occurred that objectively manifested Hilde's termination of the project of improvement to construct a personal residence on the property. First, by early 2006, Hilde contacted a real-estate agent to help him sell the property with a possible spec home constructed on it; he obtained "a drawing of a spec house" for the property; he advertised the property for sale with a promised spec home; and he received an offer from Security Property to purchase the property with the spec home. Second, Hilde entered into the July 6, 2006 purchase agreement with Shackelton to sell the property without a house constructed on it. Third, before the bank recorded its mortgage, Hilde provided it with an affidavit in which he stated that "[t]here has been no labor or materials furnished to the [property] for which payment has not been made." *See Langford Tool,* 668 N.W.2d at 443 ("If the project were one continuous project, the process of paying off all former liens would likely not have taken place."); *see also Riverview Muir,* 790 N.W.2d at 168 ("A bona fide mortgagee that has paid all known, outstanding invoices of a lien claimant at the time the mortgage was recorded does not have actual notice of an existing lien under Minn.Stat. § 514.05, subd. 1 (2008).").

The district court found that various activities that occurred during the 14–month time lapse demonstrated that there was one continuous project of improvement begun by Wruck in August 2005 and continued through October 2006. We disagree. Our search of the record reveals no evidence that any activities relied on by the district court occurred after Wruck's August 2005 excavation work but before Hilde received Security Property's offer to purchase the property with a spec home in early 2006. *See New Prague,* 263 Minn. at 258, 117 N.W.2d at 13 (concluding that the

"considerable lapse of time" of "more than 5 months" between two projects supported the conclusion that the second project was "an afterthought"). Although the record reflects staking of the property by Bogart, Pederson & Associates on July 28, 2006, the staking was after Hilde and Shackelton entered into the July 6, 2006 purchase agreement, and more than 11 months after Wruck's excavation in August 2005. We note that, although the district court found that there was never any "objective manifestation of an attempt by any ... parties to abandon the project of building a home on the Property," that finding is contrary to the court's finding reasonably supported by the record that the July 6 purchase agreement was for sale of "the land only." [1]

Applying our newly integrated analysis, we conclude that the project of improvement to which DesMarais and Big Lake Lumber contributed materials and labor in 2006 and 2007 was a separate project of improvement from the project to which Wruck contributed excavation work in August 2005. We note that we base our determination on the four factors of the parties' intent, the contracts' scopes, financing, and time lapse, without concluding that the project of improvement contributed to by Wruck was abandoned. Although ample evidence exists that Hilde objectively manifested his intent to abandon construction of his personal residence, we could not locate record evidence of an inspection by the bank of the property. *See Langford Tool*, 668 N.W.2d at 444

("The physical, visible condition, *to be determined from an inspection of the premises*, is an essential element as part of determining whether a project has been abandoned...." (emphasis added)).

We conclude that the district court erred by concluding that DesMarais's and Big Lake Lumber's mechanic's liens relate back to Wruck's excavation work in August 2005. Because attachment of the mechanic's liens does not relate back to Wruck's contributions in August 2005, the bank's mortgage has priority over the mechanic's liens and we therefore reverse the district court's determination of priority.

**DECISION**

DesMarais and Big Lake Lumber failed to prove that they contributed material and labor to one continuous project of improvement and the district court therefore erred by concluding that, under the relation-back doctrine and section 514.05, the mechanic's liens of DesMarais and Big Lake Lumber have priority over the bank's mortgage.

**Reversed.**

---

1. Although the record reasonably supports the district court's findings that, prior to October 2006, M & L "purchased ... silt fencing from ... Big Lake Lumber," Hilde "installed ... silt fencing on the Property," and "miscellaneous construction materials ... were delivered to the Property," the record is silent on when specifically the events occurred. In light of the 14-month time lapse between Wruck's excavation in August 2005 and the bank's recordation of its mortgage on October 27, 2006, the absence from the record of specific dates of silt-fence purchase, silt-fence installation, and material delivery renders the events to be of little evidentiary support for a finding that one continuous project of improvement existed.